# IN THE SUPREME COURT OF IOWA

No. 11–1626

Filed March 16, 2012

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

Complainant,

vs.

**JAMES A. WEAVER,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The Grievance Commission of the Supreme Court of Iowa found respondent committed an ethical violation and recommended the respondent be suspended from practicing law concurrent with his disability suspension. **LICENSE SUSPENDED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

James A. Weaver, Muscatine, pro se.

**ZAGER, Justice**.

The complainant, the Iowa Supreme Court Attorney Disciplinary Board, alleges the respondent, James A. Weaver, violated Iowa Rule of Professional Conduct 32:8.4(b). The alleged violation was based on Weaver's 2009 guilty pleas to charges of violating Iowa Code section 321J.2 (2009), operating while intoxicated (OWI), third offense, and section 708.7(4), harassment in the third degree. The grievance commission found Weaver's conduct violated rule 32:8.4(b) and recommended we suspend Weaver's license to run concurrently with his disability suspension. The commission also recommended Weaver be required to include medical documentation of his fitness to practice law and of his maintained sobriety prior to reinstatement. Upon our de novo review, considering the present violation and Weaver's overall conduct as a judicial officer and practicing attorney, we suspend Weaver's license to practice law for a period of two years.

## I. Factual Background.

Weaver was admitted to the Iowa bar in 1979 and served as an associate district court judge from 1982 until 2004. In 2002, Weaver was convicted of his first OWI. Following his 2002 conviction, this court found Weaver violated multiple cannons of the Iowa Code of Judicial Conduct and issued a public reprimand on December 10, 2004. Prior to that time, however, Weaver had been arrested for a second OWI in November 2004. Weaver retired from his judicial position on December 17, 2004, and resumed his career as a practicing attorney.

Weaver pled guilty to OWI second offense on April 18, 2005. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 76 (Iowa 2008). At sentencing, the district court rejected the State's sentencing recommendation. Weaver was sentenced to an indeterminate

term in prison not to exceed two years, ordered into placement in an alcohol treatment correctional facility, and fined $1500. *Id.* Weaver appealed his sentence. *Id.* at 77. Weaver also accused the sentencing judge of "not being honest about the reasons why he committed [Weaver] to the Department of Corrections." *Id.* at 78. The court of appeals affirmed his sentence, and this court denied further review. *Id.*

Based upon his conviction of OWI, second offense, and his intemperate statements about the sentencing judge, the Board filed ethical charges against Weaver. *Id.* at 74. This court found Weaver committed a number of ethical violations relating to the statements he made about the sentencing judge. *See id.* at 80–91. We also specifically found that, even though a second OWI conviction was not a felony, Weaver's criminal act reflected adversely on his fitness to practice law, in violation of our ethical rules. *See id.* at 79–80. Accordingly, on March 28, 2008, we suspended Weaver's license to practice law for three months. *Id.* at 92. Weaver failed to notify all of his clients of the suspension in violation of Iowa Court Rule 35.22. We therefore extended his suspension for sixty days, with no possibility of reinstatement until August 28, 2008. Weaver's license was reinstated on December 3, 2008.

On March 21, 2009, Weaver was pulled over for speeding and failing to stop at a stop sign. A subsequent breathalyzer test revealed his blood alcohol content (BAC) was .166. Following this latest incident, we granted an application for disability suspension on May 4. In June of 2009, Weaver pled guilty to OWI, third offense, a class D felony. On August 6, Weaver was sentenced to five years in prison and fined $3125. The sentencing judge reported the conviction to the Board on August 10.

On November 23, 2009, three days after being released from the Davenport Work Release Facility (DWRF), Weaver was arrested for third-

degree harassment and for violating his parole. These charges stemmed from Weaver calling his estranged wife twenty-six times in a period of a few hours. Weaver's parole officer, Nancy Boyle, testified before the commission. Boyle testified she received phone calls regarding the harassment from Weaver's wife and the Moline, Illinois Police Department. Weaver's wife told Boyle she believed Weaver had been drinking. The Moline police called Boyle and informed her that as a result of numerous phone calls to Weaver's wife, who worked in some capacity for the Moline school system, school officials contacted them, and the school district had "locked down" an elementary school.[1] Based on these phone calls, and her concern that Weaver may be drinking, Boyle had officers from the intensive supervision unit perform a safety check on Weaver to "find out what was going on." After making contact with Weaver, a breathalyzer reading showed a BAC of .265 at 10:00 a.m. that morning. Weaver refused voluntary substance abuse treatment and was arrested for a parole violation. Weaver pled guilty to the harassment charge on January 21, 2010. As a result, his parole was revoked, and he was again placed at the DWRF.

Weaver was released from the work release facility on June 9. On June 16, seven days after his release from the work release facility, Boyle was contacted by Weaver's now ex-wife. Weaver had gone to her house the previous Friday as scheduled to retrieve some personal property. Weaver became belligerent and upset, and she noted he had been drinking. As a result of this confrontation, she called the Scott County

---

[1]At the hearing, Weaver objected to this testimony. Weaver wanted to call the superintendent of schools to further explore the reason the school was shut down. The commission agreed to accept Boyle's testimony "merely as part of her reasons for . . . her investigation." We will also consider the school district's response to Weaver's harassment when considering what ethical violations he committed and any appropriate sanctions.

Sheriff's Department. She also advised Boyle that she had been contacted by Weaver's daughter. Weaver's daughter had called because she had been trying to reach Weaver for six days without success. She was concerned not only for her father, who gets depressed and suicidal when he drinks, but also for the safety of his ex-wife because he gets very angry when he drinks. As a result of these concerns, Boyle, along with Davenport police officers, performed a safety check on Weaver. After some difficulty making entry into the house, they discovered Weaver intoxicated, despondent, and making comments about suicide. Weaver was again arrested for violation of his parole. Weaver agreed to inpatient substance abuse treatment at that time. As a result of this incident, however, Weaver's parole was revoked, and he was sent to prison. The court will set forth additional facts in this opinion when it discusses an appropriate sanction.

The Board filed a two-count complaint on December 30, 2010, but later withdrew Count II in an amended complaint. The amended complaint alleged that Weaver had pled guilty to OWI, third offense, and third-degree harassment. The amended complaint also noted that Weaver's parole had been revoked for consuming alcohol and that he was sentenced to prison. The Board alleged Weaver's conduct violated rule 32:8.4(b), which provides it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." The commission held a hearing on the matter on September 12, 2011, and found Weaver's conviction for OWI, third offense, was a "sua sponte violation of [d]isciplinary [r]ule 32:8.4(b)." It recommended that we suspend Weaver's license concurrently with his disability suspension

and that we require Weaver to present medical documentation of his sobriety and fitness to practice law prior to reinstatement.

## II. Scope and Standard of Review.

Attorney disciplinary proceedings are reviewed de novo. Iowa Ct. R. 35.10(1); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton,* 784 N.W.2d 761, 764 (Iowa 2010). The Board bears the burden of proving misconduct by a convincing preponderance of the evidence, which is a lesser burden than proof beyond a reasonable doubt but a greater burden than is imposed in the usual civil case. *Templeton,* 784 N.W.2d at 764. If we determine the Board has met its burden and proven misconduct, "we may impose a greater or lesser sanction than the sanction recommended by the commission." *Id.*; *see also* Iowa Ct. R. 35.10(1).

## III. Findings of Fact.

The Board alleged that Weaver pled guilty to OWI, third offense and harassment in the third degree and that Weaver drank alcohol in violation of his parole. Under Iowa Court Rule 35.7(3), Weaver was precluded from disputing that he had been convicted of the OWI charge.[2]

---

[2]Regarding the OWI conviction, the Board provided notice to Weaver that it intended to invoke issue preclusion under Iowa Court Rule 35.7(3). Issue preclusion is therefore appropriate for the OWI charge. *See* Iowa Ct. R. 35.7(3) (providing for use of issue preclusion in disciplinary case where certain requirements, including notice, are met). However, issue preclusion is inappropriate for the other two allegations. The Board did not give notice that it intended to invoke issue preclusion relating to the harassment charge as is required by rule 35.7(3)(*c*). Regarding the parole violations, rule 35.7(3)(*b*) requires "[t]he burden of proof in the prior proceeding [be] greater than a mere preponderance of the evidence" to invoke issue preclusion. Weaver's parole violation revocation notes that the burden of proof in front of the administrative law judge was only a preponderance of the evidence. Also, the Board did not give notice that it intended to invoke issue preclusion on the issue of the parole violations. *See id.* r. 35.7(3)(*c*). Since rule 35.7(3) does not apply to the harassment conviction or parole revocation, we must review the factual allegations to determine whether the Board has met its burden and proven the factual allegations contained in the complaint by a convincing preponderance of the evidence.

However, the Board did not provide notice of issue preclusion regarding the harassment conviction, and therefore, we must determine whether the Board has met its burden and proven Weaver committed the criminal act of harassment before we can find a violation of rule 32:8.4(b).

Weaver pled guilty to harassment in the third degree on January 21, 2010. According to the harassment complaint offered by the Board at the hearing, Weaver called his estranged wife twenty-six times in a six-hour period. Weaver admitted making annoying calls to his wife but denied that he used threatening language. Under the Iowa Code, "[a] person commits harassment when, with intent to . . . annoy . . . another person, the person . . . [c]ommunicates with another by telephone . . . without legitimate purpose and in a manner likely to cause the other person annoyance or harm." Iowa Code § 708.7(1)(*a*)(1). Weaver pled guilty to harassment and admitted to the commission that he made annoying comments to his wife.[3] We find that the Board has proven by a convincing preponderance of the evidence that Weaver committed the criminal act of harassment.

The Board alleged Weaver's parole was revoked for consuming alcohol in violation of a condition of his parole. In support of this allegation, the Board offered the testimony of Nancy Boyle, Weaver's parole officer, who testified that on June 16, 2010, she received a call from Weaver's ex-wife, who stated that Weaver had been drinking and had gone to her home and behaved belligerently. Boyle stated she went to Weaver's residence accompanied by Davenport police officers. When Weaver did not answer the door, the police entered his residence. According to Boyle, she saw Weaver stumble into the hallway. Weaver

---

[3]In his posthearing brief, Weaver admitted having telephone conversations with his ex-wife "that she could have found annoying." He again denied threatening her.

was brought out to the back porch, and he and Boyle talked. According to Boyle, Weaver "reek[ed] of alcohol." A breathalyzer test revealed Weaver's BAC was .11. Based on this information, Boyle sought and received an arrest warrant. Weaver's parole was subsequently revoked, and he was sent to prison. Boyle's testimony and the court documents offered by the Board prove by a convincing preponderance of the evidence that Weaver violated his parole.

**IV. Ethical Violations.**

In its amended complaint, the Board alleged Weaver's conduct violated rule 32:8.4(b), which states that "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." However, the Board did not specify which of Weaver's acts allegedly violated rule 32:8.4(b). We will therefore examine each of Weaver's actions to determine whether they constitute a violation of rule 32:8.4(b).

Weaver has committed two criminal acts: He pled guilty to OWI, third offense, and third-degree harassment.[4] Third-degree harassment is a simple misdemeanor, and Weaver's third OWI is a class D felony. *See* Iowa Code §§ 321J.2(2)(*c*), 708.7(4). The commission found Weaver's felony "conviction [was] sua sponte [a] violation of [d]isciplinary [r]ule 32:8.4(b) based upon the prior decisions of the [Iowa] Supreme Court" and cited past cases to support this proposition. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 774 N.W.2d 496, 499 (Iowa 2009)

---

[4]Weaver's parole violations do not constitute violations of rule 32:8.4(b). Weaver's parole was revoked for consuming alcohol. While this was a violation of the terms of his parole, consuming alcohol was not, in and of itself, a criminal act. Since rule 32:8.4(b) only addresses criminal acts committed by attorneys, Weaver's parole violations do not fall within this rule.

(noting that a third OWI conviction violated DR 1–102(A)(6), the precursor to rule 32:8.4(b)), *overruled on other grounds by Templeton*, 784 N.W.2d at 768–69; *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Marcucci*, 543 N.W.2d 879, 882 (Iowa 1996).

While our past cases may have suggested a conviction of OWI, third offense, was a per se violation of rule 32:8.4(b), we rejected this interpretation of rule 32:8.4(b) in *Templeton.* 784 N.W.2d at 767. In that case, we noted that the comment to rule 32:8.4 states, " 'Illegal conduct *can* reflect adversely on fitness to practice law. A pattern of repeated offenses, even ones of minor significance when considered separately, *can* indicate indifference to legal obligation.' " *Id.* (quoting Iowa R. Prof'l Conduct 32:8.4(b) cmt. 2). We then held that, in order for a criminal act to constitute a violation of rule 32:8.4(b),

> "[t]here must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law. Pertinent considerations include the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct."

*Id.* (citation omitted). Therefore, we will avoid using a "mechanical process" to determine "[w]hether an attorney's criminal behavior reflects adversely on his fitness to practice law." *Weaver*, 750 N.W.2d at 79; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Keele*, 795 N.W.2d 507, 514–15 (Iowa 2011) (finding there was no violation of rule 32:8.4(b) when "the board has not demonstrated how this conviction relates to Keele's fitness to practice law").[5] We will use the factors enumerated in

---

[5]Even though there must a "rational connection" between the conduct and the actor's fitness to practice law, we still have the authority to sanction an attorney for conduct "unrelated to [the] representation of clients or any other facet of the practice of law." *Templeton*, 784 N.W.2d at 767.

*Templeton* to inform our analysis of whether an attorney's conduct actually reflects on his or her honesty, trustworthiness, or fitness as a lawyer in other respects. *Templeton*, 784 N.W.2d at 767; *see also Keele*, 795 N.W.2d at 514 (noting in cases in which illegal conduct was found to adversely reflect on a lawyer's fitness to practice law, a "sufficient nexus" existed between the conduct and the attorney's ability to function as a lawyer).

Weaver was stopped by the Iowa State Patrol for speeding and failing to stop at a stop sign. He then failed three field sobriety tests. According to a breathalyzer test, he had a BAC of .166, which is more than twice the legal limit of .08. Weaver's conduct did not create any actual victims, but by speeding and running stop signs while intoxicated, he created a grave risk of potential injury to anyone on the same road. This factor, therefore, favors a finding that Weaver's criminal act violated rule 32:8.4(b).

Weaver's alcoholism undoubtedly contributed to his commission of the criminal act of OWI, third offense. However, alcoholism is not a "legal justification, excuse, or defense" for Weaver's actions. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 41 (Iowa 2011) (noting depression not a legal justification, excuse, or defense for attorney's actions). We also note Weaver's OWI was part of a pattern of criminal conduct. This is Weaver's third OWI conviction. His second conviction arose out of similar circumstances. In that case, Weaver was stopped after a citizen called in a reckless-driving report. *Weaver*, 750 N.W.2d at 76. During that incident, Weaver had a BAC of .185. *Id.* Weaver's three convictions for the same offense certainly indicate a pattern of criminal conduct and demonstrate a disregard for laws prohibiting the operation of motor vehicles while intoxicated. *Cf. Keele*,

795 N.W.2d at 514 (finding, under the circumstances, that an isolated incident did not demonstrate a pattern of disrespect for the law).

After reviewing the factors discussed in *Templeton*, we conclude there is a sufficient nexus between Weaver's criminal act of OWI, third offense, and his fitness to practice law. Weaver's criminal act is part of a pattern of criminal conduct. This repeated disregard for the law forms a rational connection between Weaver's criminal act and his fitness to practice law. *See Templeton*, 784 N.W.2d at 767; *see also Marcucci*, 543 N.W.2d at 882 (noting a third OWI conviction is a felony and as such "constitutes an extremely serious breach of the rule of society"). Accordingly, we find Weaver has violated rule 32:8.4(b).

The commission found Weaver's OWI conviction was a violation of rule 32:8.4(b), but did not make any conclusions regarding Weaver's harassment conviction, even though the conviction was contained in the factual allegations submitted by the Board. Weaver argued in his posthearing brief that "the Board has failed to prove that either the harassment charge or the parole violations reflect adversely [on his fitness] to practice law." To find Weaver's criminal act of harassment also violated rule 32:8.4(b), we must find a sufficient nexus between the criminal act and Weaver's fitness to practice law. *Keele*, 795 N.W.2d at 515. We now apply the *Templeton* factors to Weaver's act of harassment.

Weaver made repeated calls to his wife. While he denied threatening her, he admitted the calls were annoying, which as noted above, conforms to the statutory definition of harassment. *See* Iowa Code § 708.7(1)(*a*)(1). Weaver chose to make twenty-six annoying calls to his wife. Whatever his mental state or problems with alcoholism may have been, they do not excuse the harassing behavior Weaver engaged in. *See Schmidt*, 796 N.W.2d at 41. Even though Weaver claims he did not

threaten his wife, such conduct is not necessary. *See, e.g., Comm. on Prof'l Ethics & Conduct v. Floy*, 334 N.W.2d 739, 740 (Iowa 1983) (finding that obscene phone calls constituted a violation of DR 1–102(A)(6)). The Board has not alleged a pattern of harassment, a fact which weakens the connection between Weaver's actions and his fitness to practice law.

As we previously noted, not all criminal acts reflect on an attorney's fitness to practice law. However, we feel the type of harassment engaged in by Weaver in this case does. Harassment is a serious offense, and under the facts and circumstances of this case, there is a clear connection between his actions and his fitness to practice law. We have previously found that the criminal act of invasion of privacy reflects adversely on an attorney's fitness to practice law, noting an intentional and knowing invasion of privacy "raises serious misgivings about whether [the attorney] understands the concept of privacy and respects the law protecting individuals' privacy rights." *Templeton*, 784 N.W.2d. at 766–68. Here, Weaver's pattern of communication with his wife raises similar concerns. Weaver made the conscious decision to make numerous contacts with her. Moreover, these contacts raised sufficient concern for the safety of school children that the Moline police were called, and the police reported to Weaver's parole officer that a school was locked down as a result of Weaver's calls. Clearly, under the facts of this case, there were multiple victims of Weaver's crime of harassment. *See id.* at 767.

Attorneys are required to communicate with their clients, other attorneys, judicial officers and court personnel, and law enforcement on a regular basis. Weaver's conduct demonstrates a clear disrespect for the laws regarding acceptable forms of communication with others. It is irrelevant that Weaver was not acting as an attorney when he committed

the acts that led to his conviction. *Johnson*, 774 N.W.2d at 499 ("Lawyers do not shed their professional responsibility in their personal lives." (citation and internal quotation marks omitted)). Weaver has shown his inability to communicate with others within the bounds of the law, in this case with serious consequences. We therefore conclude that by a convincing preponderance of the evidence, this criminal act of harassment reflects adversely on Weaver's fitness to practice law. Accordingly, we find Weaver's criminal act of harassment also constitutes a violation of rule 32:8.4(b).

## V. Sanctions.

Regarding sanctions, we have stated:

> There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case. In determining the appropriate discipline, we consider "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the respondent's fitness to continue in the practice of law," as well as any aggravating and mitigating circumstances. The form and extent of the sanction " 'must be tailored to the specific facts and circumstances of each individual case.' " Significant distinguishing factors in the imposition of punishment center " 'on the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.' "

*Id.* at 499–500 (internal citations omitted). Depression and alcoholism can be mitigating factors if they contributed to an attorney's misconduct. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Beek*, 757 N.W.2d 639, 644 (Iowa 2008).

Weaver has been found guilty of OWI, third offense, a class D felony, and third-degree harassment, a simple misdemeanor. Iowa Code §§ 321J.2(2)(*c*), 708.7. A felony conviction is grounds for revocation or suspension of an attorney's license to practice law. *Id.* § 602.10122(1);

Iowa Ct. R. 35.10(2). When an attorney's misconduct consists of an OWI, third offense, conviction, we have imposed a six-month suspension. *See Johnson*, 774 N.W.2d at 500 (imposing a six-month suspension for a conviction of OWI, third offense); *Marcucci*, 543 N.W.2d at 880, 883 (same). We have also imposed a six-month suspension when the OWI, third offense, conviction was accompanied by another conviction for a different crime, but noted that either conviction would warrant a suspension. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth*, 636 N.W.2d 86, 87, 89 (Iowa 2001) (imposing a six-month suspension for OWI, third offense, and domestic abuse assault causing injury). However, when an attorney's misconduct involves a second or third OWI conviction with numerous companion violations, we have imposed a two-year suspension. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 269, 271 (Iowa 2010) (imposing a two-year suspension for an attorney who committed "misconduct in seventeen client matters, including neglect, failure to communicate, and failure to safeguard his clients' interests upon termination of representation, in addition to his trust account violations and conviction of two traffic offenses"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dull*, 713 N.W.2d 199, 206–08 (Iowa 2006) (imposing a two-year suspension for neglect of client matters, appearing in court while intoxicated, being convicted of OWI, third offense, and failing to respond to the Board's inquiries), *overruled on other grounds by Templeton*, 784 N.W.2d at 768–69.

This case presents numerous aggravating circumstances, most notably Weaver's criminal history, his history of alcohol abuse and untreated chronic depression, as well as his long list of ethical violations. *Weaver*, 750 N.W.2d at 75. Weaver was first convicted of OWI in November of 2002. *Id.* As part of his sentence, he was ordered to

complete inpatient substance abuse treatment. He remained alcohol free until July 2003. *Id.* Weaver completed a second treatment program in November of 2003 and refrained from alcohol use until August 2004. *Id.* In December of 2004, we publicly reprimanded Weaver for his 2002 OWI conviction. *Id.*

One month prior to the reprimand for his first OWI conviction, Weaver was stopped for his second OWI after a citizen called police to report a reckless driver. *Id.* at 76. Weaver's BAC was .185. *Id.* Following this arrest, Weaver underwent inpatient treatment for a third time, which he completed on December 7, 2004. *Id.* On April 18, 2005, Weaver pled guilty to his second OWI. *Id.* The district court sentenced Weaver to an indeterminate prison term not to exceed two years and ordered Weaver be placed at an appropriate alcohol treatment correctional facility. *Id.* Weaver was to be released on parole "upon achievement of the maximum benefits from the treatment program." *Id.* Weaver filed a motion to reconsider the sentence, "arguing that he would not benefit from the sentence imposed, as he had already undergone the inpatient treatment program that would be available through the Department of Corrections." *Id.* The district court denied the motion, and the court of appeals affirmed the sentence on October 25, 2006. *Id.* at 77–78.

Meanwhile, on June 1, 2005, an article was published in the *Muscatine Journal* in which Weaver accused the district court judge of bias against him. *Id.* at 77. We found Weaver's second OWI conviction and his "intemperate statements to the press" both warranted suspension, and we suspended his license for three months. *Id.* at 91–92. We extended Weaver's suspension for an additional sixty days after he failed to advise a client of his suspension, failed to return the client's

files to her, and failed to advise her of a court proceeding. Weaver also admitted drinking alcoholic beverages for a ten-day period two weeks prior to the hearing.

In November of 2008, the Board wrote Weaver, requesting information in response to a complaint that had been filed against him. Weaver did not reply. Though the Board ultimately concluded there was insufficient proof of misconduct, it nonetheless admonished Weaver for failing to respond to the Board's inquiries.

On March 21, 2009, Weaver was arrested for a third OWI, the conviction at issue in this opinion. He pled guilty on June 3, 2009. On July 22, 2009, prior to sentencing, Michael R. Fitzsimmons, an intensive drug court officer with the Seventh Judicial District wrote a letter to the district court judge stating Weaver felt drug court was not

> the place for him. [Weaver] had decided he did not need to be in the Salvation Army Treatment Program and did not need all the restrictions that Drug Court imposes.
>
> It would appear that Mr. Weaver is intent on doing things his own way. The lack of following my suggestions, and statements to the Presentence Investigator, make him inappropriate for placement in the Scott County Drug Court.

On August 6, Weaver was sentenced to an indeterminate term of five years in prison and placed at the DWRF in Davenport.

Weaver was paroled from the DWRF on November 20, 2009. He subsequently committed the act of harassment, which we have previously detailed, and was placed in the Scott County jail from November 23 to January 28, 2010, where he completed an eight-week, jail-based treatment program. On January 21, he pled guilty to third-degree harassment and was sentenced to seven days in jail and given credit for time served. On January 28, he appeared before an

administrative parole judge, who determined Weaver violated his parole and sent Weaver to the DWRF again.

On June 9, Weaver was again paroled to Boyle from the DWRF. Within one week, based upon the facts detailed earlier in this opinion, Weaver was again arrested for parole violation. After a hearing, his parole was again revoked on June 28, 2010, and he was sent to prison.

This long list of past disciplinary and legal problems is an aggravating factor when considering Weaver's sanction. *See Carpenter*, 781 N.W.2d at 270. Alcoholism can be a mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser*, 782 N.W.2d 147, 154 ((Iowa) 2010) (noting, to the extent attorney acknowledged his alcoholism and has taken steps to address the problem, the court considers these acts in fashioning an appropriate sanction). So can depression. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 703 (Iowa 2008). "However, we are mindful that our primary goal is not to punish the attorney, but ' "to protect the public from lawyers rendered unfit from any cause." ' " *Hauser*, 782 N.W.2d at 154 (citation omitted).

Weaver has repeatedly demonstrated that he is unwilling or unable to conform his conduct to either the law or the ethical rules that govern attorneys. He has also shown an unwillingness to comply with the terms of his parole. The record contains numerous examples of Weaver's refusals to seek the help that is necessary for him to successfully cope with his depression and alcoholism. In order to protect the public, Weaver cannot be allowed to practice law until he has made lasting changes and overcome his issues over the long term.

We have issued six-month suspensions for OWI, third offense, convictions in the past. *Johnson*, 774 N.W.2d at 500; *Marcucci*, 543 N.W.2d at 880, 883. However, in this case, Weaver's inability to conform

his conduct to the demands of society and the rules of his profession warrants a longer suspension. Aggravating circumstances start with the fact that Weaver has a history of prior disciplinary actions. His "considerable professional experience as an attorney and judge" is another aggravating factor favoring a longer suspension. *Weaver*, 750 N.W.2d at 92. Additionally, while Weaver has acknowledged his chronic substance abuse and mental health issues, Weaver has attempted in-patient treatment on four separate occasions without success. He has also resisted treatment with appropriate mental health providers, deciding for himself what is appropriate. A longer sanction is also warranted by the fact that the reputation of the bar as a whole has suffered due to Weaver's actions. *See id.* at 91–92 (noting conduct that reduces citizens' respect for our system of justice must be discouraged). Our ultimate responsibility is to protect the public from unfit attorneys. *See Hauser*, 782 N.W.2d at 154. A lengthy suspension is necessary to discipline Weaver for his conduct and to protect the public. Accordingly, we feel a two-year suspension is appropriate.

The next issue we must address is when Weaver's suspension will begin. Weaver's license has been suspended pursuant to rule 35.16 since May 4, 2009. This suspension was due to Weaver's inability to discharge his professional responsibilities due to his depression and alcoholism. The commission noted that Weaver's disability suspension "carries perhaps a heavier burden for reinstatement under [r]ule 35.16(8), then for the regular procedure on application for reinstatement under [r]ule 35.13" and therefore recommended Weaver's suspension for his violations of rule 32:8.4(b) run concurrently with his disability suspension. Weaver stated in his October 5, 2011 posthearing brief that

he did not intend to "seek reinstatement from his disability suspension until his symptoms have been in remission for two (2) years."

We have stated that a disability suspension is not a sanction and that it is necessary to discipline an attorney for his or her unethical conduct "independent of a previous finding of [his or her] unfitness to practice law." *Van Beek*, 757 N.W.2d at 644; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Maxwell*, 705 N.W.2d 477, 480 (Iowa 2005) ("Although a disability suspension shares some of the same objectives and purposes of attorney discipline, a disability suspension is not a sanction and does not specifically address unethical conduct and the need to deter future conduct."). Adopting the commission's recommendation would mean that Weaver would be eligible to apply for reinstatement immediately. This result would not serve the purpose of sanctioning Weaver for his unethical behavior. Accordingly, we suspend Weaver's license to practice law with no possibility of reinstatement for two years from the date of this opinion.

The commission recommended that Weaver be required to provide "medical documentation of his maintenance of sobriety and his fitness to practice law." When an attorney's disciplinary problems arise out of alcoholism and depression, "[w]e have a well-established history of imposing such conditions." *Johnson*, 774 N.W.2d at 501. We agree with the commission that such conditions are appropriate in this case.

**VI. Conclusion.**

We suspend Weaver's license with no possibility of reinstatement for two years from the date of this opinion. Prior to reinstatement, Weaver must provide medical documentation from a licensed health care professional regarding his maintenance of sobriety and his fitness to practice law. Pursuant to rule 35.12(3), this suspension applies to all

facets of the practice of law. All costs are taxed to Weaver pursuant to rule 35.26(1). Prior to reinstatement, Weaver must also show that he has not practiced law during the period of suspension, that he has notified his clients as required by rule 35.22, that he has paid all costs required by rule 35.26(1), and that he meets the requirements of rule 35.13. Following this suspension, Weaver's disability suspension will remain in place until he has shown "by clear and convincing evidence[] that [his] disability has been removed and [he] is fully qualified to resume the practice of law." Iowa Ct. R. 35.16(7).

**LICENSE SUSPENDED.**

All justices concur except Wiggins, J., who takes no part.