# IN THE SUPREME COURT OF IOWA

No. 22–1011

Submitted September 14, 2022—Filed October 14, 2022

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**WESLEY ALAN JOHNSON,**

Respondent.

---

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends suspension of an attorney's license for misdemeanor convictions in violation of the rules of professional conduct. **LICENSE SUSPENDED.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode and Allison Anne Schmidt, Des Moines, for complainant.

Wesley Alan Johnson, Kelley, pro se.

**MANSFIELD, Justice.**

From early 2020 until mid-2021, while most Iowans were grappling with the COVID-19 pandemic, an Iowa attorney fought a continuing battle against methamphetamine and opiate abuse. The attorney repeatedly violated criminal laws prohibiting possession of controlled substances, operating while intoxicated (OWI), and driving while under revocation. Eventually, in mid-2021, the attorney entered an intensive drug-treatment program pursuant to court order. Having emerged from that program, and still under a disability suspension, the attorney is now before us on an attorney disciplinary complaint. The attorney has accepted responsibility and consents to a disciplinary suspension of between one year and eighteen months. The Iowa Supreme Court Grievance Commission (commission) recommends a suspension of eighteen months.

On our review, we agree that all of the attorney's criminal acts constitute ethical violations, and we order the attorney's license suspended with no possibility of reinstatement for one year.

**I. Facts and Procedural History.**

Wesley Johnson became a licensed Iowa attorney in 2008. He maintained a general practice in Ogden that included, among other things, the defense of criminal cases. In 2020 and 2021, Johnson became a criminal defendant himself on five separate occasions.

**A. The Boone County Case.** On January 30, 2020, Johnson was arrested after driving his vehicle into the median on US Highway 30 in Boone County. Johnson told the sheriff's deputies he had just left work and had fallen asleep,

but law enforcement concluded Johnson had been driving under the influence. Johnson was described as "argumentative." He initially said he had "tweaked" his back in the single-vehicle accident and could not continue doing field sobriety tests because of back pain. But when an ambulance was summoned, Johnson advised that his back was starting to feel better and that he did not need medical attention.

A search found controlled substances in Johnson's vehicle, including methamphetamine and hydrocodone. A trial information was filed in Boone County charging Johnson with four separate serious misdemeanors, including OWI first offense and possession of methamphetamine first offense (the Boone County case).

**B. The First Polk County Case.** While the Boone County case was still pending, on August 1, Johnson's vehicle was stopped while speeding on Iowa Highway 5 in Polk County. Johnson failed several field sobriety tests. He had eyelid tremors and an elevated pulse rate of 124 beats per minute. Johnson was again arrested for OWI. Once again, law enforcement found controlled substances—including methamphetamine—in the vehicle. Law enforcement also found an orange prescription bottle with foil-wrapped "candy" that contained LSD. In addition, urine tests on Johnson returned positive for methamphetamine, cocaine, and opiates.

Johnson was charged by trial information in Polk County with various misdemeanors, including OWI, possession of methamphetamine first offense,

and possession of marijuana first offense. Later, a charge was added for possession of LSD (the first Polk County case).

**C. The Dallas County Case.** While both the Boone County case and the first Polk County case were still outstanding and unresolved, Johnson was pulled over on September 4 for a traffic stop on Raccoon River Drive in Dallas County. West Des Moines police found methamphetamine on Johnson's person and in his vehicle. Johnson admitted that he had used methamphetamine two days before and that he had been using it for approximately one year. A trial information was filed in Dallas County charging Johnson with possession of methamphetamine, possession of oxycodone, and driving while revoked (the Dallas County case).

**D. Guilty Plea in the Boone County Case.** On December 11, Johnson resolved the Boone County case by pleading guilty to possession of methamphetamine first offense and OWI first offense. *See* Iowa Code § 124.401(5) (2020); *id.* § 321J.2. On the possession count, Johnson received a deferred judgment and twelve months' probation, with the specific conditions that he obtain a substance abuse evaluation, complete recommended treatment, and abstain from the use of alcoholic beverages and controlled substances. On the OWI count, Johnson was sentenced to four days in the Boone County Jail with credit for time served.

**E. The Jasper County Case.** Within two months, Johnson once again found himself in legal trouble. On February 13, 2021, a state trooper stopped Johnson on Interstate 80 in Jasper County because he was driving under

revocation. Methamphetamine was found in plain view in the vehicle, and Johnson was arrested. A trial information was filed in Jasper County charging Johnson with driving while revoked and possession of methamphetamine first offense (the Jasper County case).

**F. The Second Polk County Case.** Just four days after the Jasper County arrest, Johnson was apprehended by Altoona police on February 17 for driving under revocation. The officers found an oxycodone pill inside a bottle labeled for an unrelated prescription; Johnson said he "did not know it was in there." A trial information was filed in Polk County charging Johnson with possession of oxycodone and driving while revoked (the second Polk County case).

**G. Guilty Plea in the First Polk County Case.** One week later, on February 24, Johnson resolved the first Polk County case by pleading guilty to OWI first offense, and possession of LSD. *See id.* § 321J.2; *id.* § 124.401(5). On the OWI count, Johnson received a one-year jail sentence with all but ten days suspended and was placed on probation for one year. On the possession count, Johnson received a concurrent 180-day sentence with all but one day suspended, to run concurrent with the OWI sentence. The court noted that Johnson had already received a substance abuse evaluation and ordered him to complete any recommended programming.

**H. Guilty Plea in the Dallas County Case.** A few weeks thereafter, on March 18, a bench warrant was issued in the Dallas County case when Johnson failed to appear for a pretrial conference. One week later, Johnson resolved the Dallas County case by pleading guilty to possession of methamphetamine. *See*

*id.* § 124.401(5). He received a deferred judgment and was placed on probation for one year.

**I. Guilty Plea in the Second Polk Case.** On May 10, Johnson resolved the second Polk County case by pleading guilty to possession of oxycodone. *See id.* § 124.401(5) (2021). He was sentenced to ten days' incarceration with credit for seven days served.

**J. Johnson Enters but Then Leaves Inpatient Substance Abuse Treatment.** During that same month of May 2021, Johnson was admitted to an inpatient facility in Clarinda for treatment of his substance abuse. Within two weeks, he left the program by departing the facility on foot. A representative of the facility reported that Johnson had "struggled with motivation" and "really minimize[d]" his use, which he didn't "see as a problem." Probation violation reports were filed.

**K. Johnson Consents to a Disability Suspension.** The Iowa Supreme Court Attorney Disciplinary Board (Board) petitioned to have Johnson's law license temporarily suspended due to a disability that prevented him from discharging the professional responsibilities associated with the practice of law. On May 24, with Johnson's written consent, a temporary suspension was entered and remains in effect to this day.

**L. Guilty Plea in the Jasper County Case.** On August 4, Johnson resolved the Jasper County case by pleading guilty to both the possession of methamphetamine first offense and driving while revoked charges. *See id.*

§ 124.401(5); *id.* § 321J.21. He was sentenced to fourteen days in jail with credit for time served.

**M. The Deferred Judgments Are Revoked.** As a result of Johnson's probation violations, his deferred judgments in the Boone County case and the Dallas County case were revoked. He was ordered by both district courts to complete inpatient treatment for substance abuse.

**N. Johnson Completes Inpatient Substance Abuse Treatment.** The Polk County District Court ordered that Johnson remain in jail until a bed opened up in the Bridges of Iowa residential treatment program. Johnson entered that program in August 2021 and successfully completed it in April 2022. Johnson was also discharged from probation.

**O. This Disciplinary Proceeding.** Johnson's criminal convictions came to the attention of the Board. On February 8, 2022, the Board filed a complaint charging Johnson with multiple violations of Iowa Rule of Professional Conduct 32:8.4(b). This rule makes it professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects. *Id.*

The Board and Johnson entered into a stipulation of facts, exhibits, rule violations, mitigating and aggravating circumstances, and sanction—along with a waiver of a formal hearing. In addition to stipulating to Johnson's criminal convictions in the five cases, the Board and Johnson also agreed to the admission of various police reports and other exhibits from those cases. The parties further stipulated that Johnson's convictions in the five cases violated

rule 32:8.4(b), that Johnson's criminal acts "created a grave risk of potential injury to other people," and that Johnson "demonstrated a pattern of criminal conduct and profound disrespect for the law." The parties agreed that Johnson's cooperative attitude toward the proceedings, his acknowledgment of misconduct, the fact that his criminal conduct was nonviolent and occurred outside his legal practice, his lack of prior discipline, and his completion of substance abuse treatment should be considered mitigating factors. On the other side of the balance, the parties agreed that the pattern of misconduct, disregard for state law, and persistent substance abuse should be considered aggravating factors. As to sanction, the Board and Johnson stipulated that Johnson should have his law license suspended for twelve to eighteen months.

The commission considered the matter on the basis of the parties' stipulation without further submission or hearing. On June 13, the commission issued its report and recommendation, which expressed serious concern about Johnson's five separate instances of substance-abuse-related criminal conduct within a little over a year. The commission found that Johnson's completion of substance abuse treatment was a "neutral" rather than a mitigating factor. The commission was concerned by Johnson's earlier delays and resistance to treatment and was skeptical as to whether he would remain substance free in the future. The commission recommended an eighteen-month suspension, at the high end of the parties' stipulation, to commence only after Johnson's disability suspension had been lifted.

**II. Standard of Review.**

We review the record below de novo. *See* Iowa Ct. R. 36.21(1). Violations must be proved by a convincing preponderance of the evidence. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Bergmann*, 938 N.W.2d 16, 21 (Iowa 2020). We are bound by the parties' stipulations of fact, but not by their stipulations as to ethical violations or recommended sanctions. *See* Iowa Ct. R. 36.16(2)–(3).

**III. Ethical Violations.**

The Board alleged—and the commission agreed—that Johnson's criminal acts constituted a violation of Iowa Rule of Professional Conduct 32:8.4(b). Rule 32:8.4(b) states, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." *Id.* Not all criminal acts violate this rule. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 767 (Iowa 2010) ("The mere commission of a criminal act does not necessarily reflect adversely on the fitness of an attorney to practice law.").

Rule 32:8.4(b) applies to those criminal acts that "reflect[] adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). For a criminal act to constitute a violation of rule 32:8.4(b),

> [t]here must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law. Pertinent considerations include the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct.

*Templeton*, 784 N.W.2d at 767 (quoting *In re Conduct of White*, 815 P.2d 1257, 1265 (Or. 1991) (en banc) (per curiam)).

Having said that, we have little difficulty concluding that Johnson's criminal conduct violated rule 32:8.4(b). Johnson repeatedly combined illegal drug use with driving while intoxicated and driving while under revocation. He continued to drive and use controlled substances, even when he was under court orders directing him not to do so.

Operating while intoxicated "create[s] a grave risk of potential injury to anyone on the same road." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Sears*, 933 N.W.2d 214, 221 (Iowa 2019) (alteration in original) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 11 (Iowa 2012)). Johnson's first OWI conviction arose after he drove off the highway and onto a median; this dangerous situation could easily have resulted in personal injury or worse. Johnson then continued to drive under the influence, resulting in a second OWI arrest and conviction just months later. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 878–79 (Iowa 2012) (discussing these considerations in finding that an attorney's OWI convictions violated rule 32:8.4(b)).

Also, Johnson repeatedly used his vehicle after his driver's license had been revoked.[1] He unlawfully possessed controlled substances multiple times.

---

[1]Johnson was only convicted *once* of driving while under revocation, but the stipulated record indicates that he did so on *three* occasions. "[A]n attorney who commits a criminal act reflecting adversely on his or her fitness as a lawyer may be found to have violated rule 32:8.4(b) even if the authorities never charged the attorney with a crime." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Taylor*, 887 N.W.2d 369, 378 (Iowa 2016).

This pattern of criminal conduct showed disrespect for the law. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Khowassah,* 890 N.W.2d 647, 651 (Iowa 2017) (noting that a pattern of criminal conduct "reflects adversely" on an attorney's fitness to practice law and "demonstrates disrespect of the law"); *Cannon,* 821 N.W.2d at 879–80 ("Cannon's repeated convictions for substance abuse-related offenses demonstrate disrespect for the law and law enforcement."); *see also id.* at 880–81 ("We have held that under our code of professional responsibility, attorneys have special responsibilities to refrain from drug possession and possession of drug paraphernalia."). For all these reasons, we find that Johnson violated rule 32:8.4(b).

**IV. Sanction.**

In determining an appropriate sanction, we have stated that "[t]here is no standard sanction warranted by any particular type of misconduct. Though prior cases can be instructive, the sanction warranted in a particular case must be based on the circumstances of that case." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Newport,* 955 N.W.2d 176, 184 (Iowa 2021) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Hier,* 937 N.W.2d 309, 317 (Iowa 2020)). Despite that, "we try to achieve consistency with our prior cases when determining the proper sanction." *Templeton,* 784 N.W.2d at 769. "Our primary purpose for imposing sanctions is not to punish the lawyer but to protect the public." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Nelson,* 838 N.W.2d 528, 542 (Iowa 2013).

As we have noted, the parties stipulated to a suspension of twelve to eighteen months, and the commission recommended an eighteen-month

suspension. We give the commission's recommendation respectful consideration although we are not bound by it. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Saunders*, 919 N.W.2d 760, 764 (Iowa 2018).

This case stands out in several respects. Johnson was involved in five separate criminal incidents in the course of just over a year. He violated probation repeatedly. On the other hand, all of his offenses were misdemeanors, and all were related to Johnson's ongoing battle with substance abuse. Johnson did not commit any acts of violence, and there was no showing that any of his criminal conduct was directly connected to his law practice.

Citing *Iowa Supreme Court Attorney Disciplinary Board v. Johnson*, 774 N.W.2d 496, 499 (Iowa 2009), *overruled in part by Templeton*, 784 N.W.2d 761, the commission observed, "In disciplinary cases, it is irrelevant that the respondent was not acting as an attorney when committing the acts that led to the conviction." We think the word "irrelevant" overstates the matter. We later overruled *Johnson* in part. *See Templeton*, 784 N.W.2d at 768–69. Also, when we determined the appropriate sanction in *Johnson*, we noted that "there was no evidence presented that indicated Johnson neglected or injured any of his clients by his drinking." 774 N.W.2d at 500. Thus, even in *Johnson*, we viewed whether the criminal act occurred in connection with the attorney's law practice as relevant to the sanction. Criminal conduct outside of an attorney's law practice can certainly be a basis for sanctions, but context is relevant.

The parties have stipulated to certain mitigating and aggravating factors. To the extent those stipulations involve matters of fact, they are binding on us;

to the extent they involve questions of law, they are not. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Lynch*, 901 N.W.2d 501, 511 n.5 (Iowa 2017).

In reviewing the mitigating and aggravating circumstances, Johnson's lack of prior disciplinary history is a mitigating circumstance. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Akpan*, 951 N.W.2d 440, 456–57 (Iowa 2020) (stating a lack of prior discipline is a mitigating circumstance). So are his cooperation with the Board and acceptance of responsibility. *See Bergmann*, 938 N.W.2d at 23 (finding cooperation and acceptance to be mitigating). Additionally, Johnson's completion of substance abuse treatment is a mitigating factor. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 221 (Iowa 2016) ("[W]e do consistently recognize seeking mental health or other substance abuse treatment as a mitigating factor."). As for aggravating circumstances, we agree that Johnson's pattern of misconduct is an aggravating factor. *See Newport*, 955 N.W.2d at 185 (finding a pattern of similar misconduct to be aggravating).

The parties stipulated, and the commission concluded, that two of our precedents were particularly relevant: *Iowa Supreme Court Attorney Disciplinary Board v. Weaver*, 812 N.W.2d 4, and *Iowa Supreme Court Board of Professional Ethics & Conduct v. Stefani*, 616 N.W.2d 550 (Iowa 2000) (en banc). We also find those precedents to be relevant.

In *Weaver*, the attorney had a longstanding problem with alcohol abuse and a "long list of past disciplinary and legal problems." 812 N.W.2d at 15. Most recently, he had been convicted of OWI third, a class "D" felony, and sentenced to an indeterminate five-year term. *Id.* at 7–8. Three days after his release from

custody, he had called his estranged wife in a drunken state twenty-six times in a period of a few hours. *Id.* at 8. This resulted in the attorney's arrest, revocation of his parole, and a conviction for third-degree harassment. *Id.* The attorney went to jail. *Id.* at 8, 14–15. Six weeks later, he violated his parole again and was sent to prison. *Id.* On these facts, we suspended the attorney's law license with no possibility of reinstatement for two years. *Id.* at 15–16.

In *Stefani*, the attorney initially pleaded guilty to possession of cocaine, a federal misdemeanor. 616 N.W.2d at 552. He continued to use cocaine prior to sentencing, and as a result, was ordered to serve three months' incarceration followed by three years' probation. *Id.* A year later, the attorney possessed and used cocaine again and was ordered to enter an inpatient program. *Id.* The attorney eventually entered the program but not in a timely fashion. *Id.* Following his discharge, the attorney did not report for supervision, and a warrant was issued for his arrest. *Id.* Eventually, the attorney was sentenced in federal court on a second conviction for possession of cocaine. *Id.* We suspended the attorney's license with no possibility of reinstatement for six months. *Id.* at 553.

We concur with the assessment of the parties and the commission that this case does not warrant as severe a sanction as *Weaver*. The attorney there had at least a decade-long substance abuse problem. *See Weaver*, 812 N.W.2d at 13–14 (detailing the defendant's history with substance abuse). His attitude toward treatment was defiant. *Id.* at 14. In addition, he had previously received a public reprimand for an OWI conviction and a three-month suspension for an OWI second conviction and intemperate statements about the sentencing judge.

*Id.* By contrast, Johnson has no prior disciplinary history and has taken steps to overcome his addiction to controlled substances. Furthermore, the misconduct here does not include a felony conviction or a conviction for harassment.

At the same time, we are persuaded that a stiffer sanction should be imposed here than we imposed in *Stefani*, although the two cases are somewhat analogous. Both cases involve substance abuse that resulted in a series of offenses and probation violations. In fact, Johnson has some mitigating circumstances that were not present in the *Stefani* case. Yet a key consideration is that Johnson's misconduct was not limited to possession offenses. Johnson accumulated additional convictions because he drove under the influence, putting other lives at risk. He also drove while under revocation, in flagrant disregard of what the law required him to do.

We take note of two other precedents. In *Iowa Supreme Court Attorney Disciplinary Board v. Cannon*, we suspended an attorney's license for thirty days after he was convicted of boating while intoxicated, possession of cocaine, and OWI in three separate incidents. 821 N.W.2d at 878–79, 882–83. Significantly, the attorney had "sought and complied with treatment." *Id.* at 881. In *Iowa Supreme Court Attorney Disciplinary Board v. Khowassah*, we suspended an attorney's license for six months after he obtained a public intoxication conviction and his third OWI conviction. 890 N.W.2d at 652. These separate incidents occurred "less than four months after we reinstated his license" following his second OWI conviction. *Id.* at 651. We also pointed out that the

attorney had delayed in seeking alcoholism treatment in violation of a court order, although by the time of the hearing he was "engaged in rehabilitative efforts." *Id.* at 652.

In light of all of the foregoing, we conclude Johnson's license should be suspended with no possibility of reinstatement for one year. Due to his substance abuse and disregard of the law, Johnson was convicted in five separate criminal cases over the course of a year. We agree with the commission that a lengthy suspension is needed to protect the public. In landing at the lower end rather than the upper end of the parties' stipulation, we quibble with the commission's views only slightly.

First, because Johnson had previously dropped out of treatment, the commission deemed Johnson's completion of the eight-month Bridges of Iowa program to be only a "neutral" factor. We disagree. Even in the wake of earlier failures, attorneys should receive credit for addressing their substance abuse issues. Johnson's prior missteps have already been accounted for as ethical violations.

Second, the commission was "skeptical [that] Johnson has experienced a complete recovery and has the ability and will to remain substance free in the future." That prediction may turn out to be correct. However, we are hesitant to make a similar prediction, particularly in a case decided on a stipulated record where Johnson made no personal appearance. We believe the best way to protect the public against a potential relapse is to place appropriate conditions on Johnson's reinstatement.

Third, Johnson has been under a disability suspension (to which he consented) since May 24, 2021. The commission viewed the disability suspension and the disciplinary sanction as two separate and severable matters. However, under our precedent, "we can consider an interim suspension arising from the same conduct when calibrating the disciplinary suspension," *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 662 (Iowa 2013).

*Clarity* provides guidance on this point. There, an attorney "neglected his clients and mishandled their cases and money while struggling with alcoholism." *Id.* at 650. By the time of our decision, the attorney had been under a disability suspension for about seventeen months. *Id.* After observing that the two forms of suspension "serve overlapping but distinct purposes" and "[b]oth types of suspension protect the public," we took the disability suspension into account in imposing a one-year suspension. *Id.* at 662–63.

The final issue is when Johnson's disciplinary suspension should begin. The commission recommended that Johnson's disciplinary suspension should commence only after his disability suspension is lifted. We have not followed that course of action in the past. *See id.* at 663 (starting the disciplinary suspension on the date of release of our opinion); *Weaver*, 812 N.W.2d at 16 (same). We will follow our usual practice of having the disciplinary suspension begin when we issue our decision, subject to the ten-day grace period that became effective on October 1, 2022.[2]

---

[2]On September 19, 2022, we approved an amendment to rule 34:23(1) providing that "[t]he suspension period will start ten days from the date of the order unless the order states otherwise." Thus, Johnson's suspension will commence ten days from the date of this decision.

**V. Disposition.**

Johnson's struggles with substance abuse are, unfortunately, not a unique occurrence. In recognition of this fact, we recently adopted a requirement that all Iowa attorneys complete one hour of continuing legal education annually in either diversity and inclusion or "attorney wellness." Iowa Ct. R. 42.2(1). Attorney wellness is defined as "a separate, designated, and dedicated session of instruction designed to help attorneys detect, prevent, or respond to substance-related disorders or mental illness that impairs professional competence." *Id.* r. 42.1(7).

We suspend Johnson's license to practice law in Iowa indefinitely with no possibility of reinstatement for one year. Prior to reinstatement, Johnson must provide medical documentation from a licensed healthcare professional indicating his fitness to practice law, which shall include mental health and substance abuse evaluations. Johnson must also meet all requirements for the lifting of his disability suspension. *See id.* r. 34.17(7). This disciplinary suspension applies to all facets of the practice of law. *See id.* r. 34.23(3). All costs are taxed to Johnson pursuant to rule 36.24(1). *Id.* r. 36.24(1).

**LICENSE SUSPENDED.**