# IN THE SUPREME COURT OF IOWA

No. 12–2089

Filed March 1, 2013

IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,

      Complainant,

vs.

**STANLEY A. ROUSH,**

      Respondent.

_____

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends suspension of attorney's law license for ethical violations. **LICENSE SUSPENDED.**

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

Stanley A. Roush, Cedar Rapids, pro se.

**MANSFIELD, Justice**.

This attorney disciplinary proceeding concerns a criminal defense attorney's federal criminal conviction for possession of cocaine base. The incident occurred because the attorney had an untreated substance abuse problem. The attorney does not dispute that he committed an ethical violation, and the main issue we need to decide is the appropriate sanction. Based on our review of this matter, including the aggravating and mitigating circumstances and our relevant precedents, we conclude a sixty-day suspension of the attorney's license to practice law in this state is appropriate.

## I. Factual and Procedural Background.

Stanley Roush is a Cedar Rapids attorney, the majority of whose practice consisted until recently of federal criminal defense work. He was admitted to the Iowa bar in 1984, following his graduation from the University of Iowa College of Law. He is also admitted to appear before the United States District Courts for the Northern and Southern Districts of Iowa, and the United States Court of Appeals for the Eighth Circuit.

A number of individuals submitted affidavits in this proceeding attesting to Roush's character and skill as a lawyer. A friend and client wrote that Roush provided outstanding legal services to him. Another individual, a Cedar Rapids attorney who has known him for twenty-five years, wrote that Roush was a fine lawyer. A fellow attorney and fantasy baseball league member confirmed that Roush "has always been conscientious, honest, and engaging," and that he is a "gifted attorney who will continue to serve his clients well." A friend who lost a child noted Roush's compassion, kindness, and sincerity. He relayed that Roush helped establish memorials, scholarships, and financial commitments in his daughter's memory, all free of charge, and added, "I

have every confidence in his abilities as a professional." Another friend and client opined that Roush "has not only been a good friend and father, but also a reliable lawyer."

Despite these strengths, Roush's alcohol consumption was regular and became problematic, by his own admission. Drinking ultimately became a gateway to his use of cocaine. Roush would drink after work with a happy-hour group, while playing golf with friends, and during football games. Roush acknowledged that "once or twice a week I would drink to excess," meaning he would consume "six or more" drinks. He indicated that sometimes a main purpose of the golf and football outings was to drink.

Roush also used marijuana casually. He would also occasionally purchase small amounts of marijuana. In 2002, Roush was arrested when he tried to bring marijuana through airport security. On January 13, 2003, based on this event, Roush was convicted of federal misdemeanor possession of a controlled substance, in violation of 21 U.S.C. § 844. Roush self-reported to our attorney disciplinary authority and received a private admonition at that time.

On the heels of his airport arrest and related conviction, Roush's ex-wife confronted him about his marijuana use. She and Roush had divorced in 1994, and he retained primary physical custody of their daughter for ten years. After that, custody of his daughter "kind of went back and forth for a little bit." At some point, Roush's relationship with his daughter became strained. Roush maintains that his family troubles led to feelings of depression, although he never sought diagnosis or treatment. Instead he continued to drink to excess at times and use marijuana recreationally.

Eventually, according to Roush, his drinking and family-related stress led him to try crack cocaine. He initially used it every couple months, beginning in 2007 or 2008, and was using it approximately every month by the time of his November 2011 arrest. Roush would purchase about $200 worth of crack cocaine each time. Roush claims that he never was intoxicated from crack cocaine while practicing law because he typically used on a Friday or Saturday evening. Roush also believes his crack cocaine use, while generally destructive, did not negatively affect his practice or his clients.

Things came to a head in November 2011, when Roush became the target of a United States Drug Enforcement Administration (DEA) sting operation. A client of Roush's (CS #1) told the government that a female acquaintance of his (CS #2) regularly smoked crack cocaine with Roush.[1] Law enforcement then arranged for CS #1 to purchase crack cocaine from CS #2 in a controlled buy. At that point, law enforcement officials interviewed CS #2, who admitted to smoking crack cocaine with Roush. CS #2 told authorities that Roush purchased crack from her monthly. The DEA task force agents thus set up another controlled buy, this time with Roush as the target and CS #2 as the cooperating informant. CS #2 was given a digital recording device and an audio transmitter. She met with Roush, and the two of them then purchased $200 worth of crack cocaine, amounting to two small baggies, from a dealer.

Roush and CS #2 left the dealer and they drove in Roush's car to a gas station. CS #2 went inside while Roush remained in the car. CS #2 called a task force officer, telling him that Roush was holding the crack cocaine in his left hand. A task force officer approached Roush and

---

[1]Roush has never done any legal work for CS #2, and describes her as someone he simply did cocaine with.

asked him where the crack was. Roush told officers he was "just getting a 'whore'" and that he had swallowed the crack. Officers searched Roush's person and did not find any contraband; however, a search of his car revealed two plastic baggies of crack cocaine behind the driver's seat, nearest what would have been Roush's left side. After officers offered Roush medical assistance, in light of his claim that he swallowed crack cocaine, he told the officers that he was fine and that medical attention was not necessary. When Roush had received *Miranda* warnings, he again told officers it was all about the "whore."

Following Roush's arrest, he was charged on December 6, 2011, with a second offense violation of 21 U.S.C. § 844 for his possession of cocaine base. This is a felony under federal law, but it is undisputed that the same offense would be an aggravated misdemeanor under Iowa law. *See* Iowa Code § 124.401(5) (2011) (providing that a second offense for possession of a controlled substance offense is an aggravated misdemeanor). On December 13, Roush entered a guilty plea. The United States District Court for the Northern District of Iowa accepted his plea and later sentenced him to a fifteen-day prison term and a $2500 fine.

On December 9, 2011, Roush self-reported his conduct to the Iowa Supreme Court Attorney Disciplinary Board (Board), conceding that his conduct was in violation of the Iowa Rules of Professional Conduct and indicating "a willingness to accept the appropriate sanction." Roush has continued to practice law, albeit with a significantly reduced workload. He has stopped taking federal criminal cases and does not know whether he intends to return to that area of practice.

On July 11, 2012, the Board filed a complaint alleging Roush violated Iowa Rule of Professional Conduct 32:8.4(b). Roush answered,

admitting all of the Board's factual allegations, as well as its conclusion that Roush violated rule 32:8.4(b). Roush also acknowledged that a suspension was appropriate.

A one-day hearing before a division of the Grievance Commission of the Supreme Court of Iowa (commission) took place on October 4, 2012. Again, Roush conceded his violation. Still, he noted that his behavior, while unethical, did not involve his clients or any dishonesty. Acknowledging his progressing alcoholism, he stated that he had nonetheless continued to effectively attend to all client matters. He traced his criminal behavior to his alcoholism, admitting "I would not have used crack cocaine if I had not been drinking."

In addition, Roush wrote and later explained to the Commission that he has since sought treatment. He obtained a substance abuse evaluation at St. Luke's Hospital Chemical Dependency Services, which indicated he met the criteria for alcohol dependence and substance abuse. At St. Luke's, Roush met with a counselor six more times after the initial evaluation. The counselor did not recommend further treatment thereafter, and Roush "took issue with him" because he "was finding it so helpful, and [he] enjoyed [the] sessions." Roush also began to participate in Alcoholics Anonymous (AA), daily for the first ninety days, and three to four times per week after that. He stated that the program includes "things like taking inventory, talking to people, and making a list of people you've harmed, and making amends with them. I have done those sorts of things." Roush also submits to random urinalysis testing twice a month and has not tested positive for any controlled substances. Roush has served the jail time and paid the fine imposed by the federal district court.

Roush told the commission that he intends to continue AA. He denies having consumed alcohol since his arrest in November 2011. Roush also testified as follows:

> Q. How would you describe your prospect for resuming the abuse of alcohol? How do you evaluate that? A. I am optimistic and faithful.
>
> Q. What about the prospect for resuming the consumption of marijuana? A. I'd rather put a hole in my head.
>
> Q. What about your prospect for resuming consumption of cocaine base? A. I'd rather put two holes in my head.

Roush later clarified that his latter two answers were "hyperbolic" and a "bad attempt at humor" and denied that he had ever had a suicidal thought or ideation.

Roush repeatedly indicated that he believes his substance abuse never harmed his practice. He noted, "I believe I have been competent and fit to practice law before, during, and after my arrest and prosecution."

At Roush's sentencing hearing in 2012, the federal district court took note of Roush's performance in a recent case, stating, "He did a good job in that case, and he should be proud of the work that he did." Yet, Roush acknowledged to the commission that he needs to

> [c]ontinue to be honest, open, and willing to be honest in all my affairs, be honest with myself, primarily. I've always been an honest person. There has been no dishonesty in my practice ever, but I got to where I was less honest with myself, so continue to take personal inventory and practice honesty in all of my affairs.

Following the one-day hearing, the commission issued a report finding that Roush had violated rule 32:8.4(b) and recommending a six-month suspension. The commission appeared to be troubled by several

things. Citing Roush's testimony about "put[ting] a hole" in his head, it observed that "such testimony shows Respondent continues to grapple with significant mental health challenges, even if he has taken steps to address his substance abuse issues." The commission also expressed concern that when Roush was arrested, he had "denied any knowledge of the crack cocaine." Additionally, the commission took note of Roush's prior criminal conviction. The commission recommended placing a number of conditions on Roush's reinstatement after the six-month suspension: (1) passing a mental health evaluation by a physician indicating Roush is fit to practice law; (2) complying with any treatment suggested by the physician; (3) obtaining substance abuse evaluation outside of AA, also indicating his fitness to practice law; and (4) disengaging and refraining from representation of a former client, who is now his AA sponsor.

This proceeding now comes before us. In its statement regarding sanction, the Board does not recommend a specific time period for a suspension, but indicates that *Iowa Supreme Court Attorney Disciplinary Board v. Cannon,* 821 N.W.2d 873 (Iowa 2012), where we imposed a thirty-day suspension, is instructive. The Board also agrees with the first three conditions on reinstatement proposed by the commission. In his statement regarding sanction, Roush concurs that a suspension is appropriate but maintains that six months is too long. He too cites to *Cannon* and urges us to impose a similar suspension. Roush also objects to the commission's fourth and final condition of reinstatement.

## II. Scope of Review.

We review attorney disciplinary proceedings de novo. Iowa Ct. R. 35.11(1); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields,* 790 N.W.2d 791, 793 (Iowa 2010). We give respectful consideration to the

commission's findings and recommendations but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 864 (Iowa 2010). The burden is on the Board to prove attorney misconduct by a convincing preponderance of the evidence. *Id.* "This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). It is also a less stringent burden than clear and convincing evidence which is "the highest civil law standard of proof." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ronwin*, 557 N.W.2d 515, 517 (Iowa 1996). If a violation is established, we "may impose a lesser or greater sanction than recommended by the commission." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Murphy*, 800 N.W.2d 37, 42 (Iowa 2011); *see also* Iowa Ct. R. 35.11(1).

### III. Review of Alleged Ethical Violation.

The Board alleged, and the commission found, that Roush violated Iowa Rule of Professional Conduct 32:8.4(b). That rule makes it "professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). However, "[t]he mere commission of a criminal act does not necessarily reflect adversely on the fitness of an attorney to practice law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 767 (Iowa 2010).

For a criminal act to constitute a violation of rule 32:8.4(b),

> " '[t]here must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law. Pertinent considerations include the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or

potential injury to a victim; and the presence or absence of a pattern of criminal conduct.' "

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 11 (Iowa 2012) (quoting *Templeton*, 784 N.W.2d at 767).

Roush admits he violated Iowa Rules of Professional Conduct, and our review of the record yields the same conclusion. We find that his criminal conduct was related to his fitness to practice law and accordingly amounts to a violation of rule 32:8.4(b).

We begin by noting Roush's mental state. *See Templeton*, 784 N.W.2d at 767. The record shows that Roush suffers from alcohol dependency, and has sought treatment in the form of AA meetings and counseling following his 2011 conviction. In addition, Roush indicated feelings of depression, although he has not sought a professional diagnosis. These factors may have led to his continued drug use, but "depression and alcoholism do not excuse his mistakes." *Cannon*, 821 N.W.2d at 878. Like Cannon, Roush "presented no medical evidence as to how his depression affected his mind and decision making." *Id.*; *see also Weaver*, 812 N.W.2d at 11 (Iowa 2012) (noting that alcoholism is no justification, excuse, or defense to a violation of rule 32:8.4(b)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 41 (Iowa 2011) ("Schmidt's depression does not excuse the choices he made, especially as there was no evidence submitted that this mental condition clouded Schmidt's judgment in any manner."). On the contrary, Roush acknowledged before the commission that he knew his conduct was a violation of federal law in both the 2002 and 2011 incidents.

We also consider whether there was a pattern of criminal conduct. *See Cannon*, 821 N.W.2d at 879; *Weaver,* 812 N.W.2d at 10–11; *Templeton*, 784 N.W.2d at 767. We can identify a pattern here. Roush

was convicted in 2003 of illegal drug possession, but kept engaging in the same conduct. Not only did he continue to be a marijuana user, but by 2007 or 2008 he had begun purchasing and using crack cocaine on a regular basis. Roush admits the controlled buy was not his first purchase of crack cocaine.

Roush's willingness to make a habit of conduct for which he had already received criminal sanctions bears a connection to the practice of law. *See Cannon*, 821 N.W.2d at 879 (noting that "a prior conviction is relevant to determining whether an attorney has displayed a pattern of criminal conduct"); *Weaver*, 812 N.W.2d at 11 ("Weaver's three convictions for the same offense certainly indicate a pattern of criminal conduct and demonstrate a disregard for laws prohibiting the operation of motor vehicles while intoxicated."); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 101 (Iowa 2010) (finding a pattern of conduct in an attorney's second alcohol-related conviction for domestic abuse and violations of court orders); *Templeton*, 784 N.W.2d at 766–68 (finding that an inactive attorney violated rule 32:8.4(b) in light of repeated incidents of peeping into homes and a guilty plea to six counts of invasion of privacy).

In *Cannon*, we found that an attorney's four convictions—two for operating a vehicle while intoxicated, one for possessing cocaine, and one for operating a boat while intoxicated—demonstrated a "clear pattern of criminal conduct." *Cannon*, 821 N.W.2d at 879. Although Roush has only two convictions, both were for possession of illegal substances and the pattern is nonetheless clear, given these convictions and his other admitted instances of cocaine use.

Roush's course of conduct also shows disrespect for the rule of law and for law enforcement officials. Upon being arrested in 2011, Roush

told officers falsely that he had swallowed the crack cocaine. *See Cannon*, 821 N.W.2d at 879 (noting the attorney falsely denied he had been driving the car before being arrested for OWI). He also claimed it was all about the "whore." In addition, a regular part of Roush's law practice involved the defense of individuals who were involved with illegal drugs. Thus, Roush was violating the category of laws that he regularly encountered in his daily work. Roush noted that "[s]imple possession charges are virtually never brought in federal court." Yet he believes his "relationship with the federal court . . . led them to prosecute [him] federally."

Roush acknowledges, and we agree, that his disrespect for the law would "lessen . . . public confidence in the legal profession." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 762 N.W.2d 129, 138 (Iowa 2009) (citations and internal quotation marks omitted). That his conduct was not isolated, but part of an ongoing substance abuse problem that resulted in two drug convictions, is itself disrespectful to the rule of law. *See Axt*, 791 N.W.2d at 101 (noting that an attorney's second domestic abuse conviction "clearly demonstrate[s] his disrespect for the law"); *see also Cannon*, 821 N.W.2d at 879 (noting that a pattern of criminal conduct is also important in identifying disrespect for the law). In addition, we have said that avoiding using illegal drugs is one of an attorney's "special responsibilities." *Cannon*, 821 N.W.2d at 880–81 (citing *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Sloan*, 692 N.W.2d 831, 832–33 (Iowa 2005)).

We next consider the presence or absence of victims involved in Roush's criminal conduct. *See Templeton*, 784 N.W.2d at 767. Although it appears no one was directly injured as a result of Roush's conduct, "[w]e also consider potential injury to persons or property in determining

whether a violation of rule 32:8.4(b) occurred." *Cannon*, 821 N.W.2d at 878. Roush testified that his substance abuse issues never affected his practice, and the observations of the federal judge who sentenced him tend to support that. Nonetheless, he was caught when a client of his apparently decided to inform on him. This suggests that down the road, Roush's illegal drug use could have led to difficult situations in his law practice wherein he represented drug offenders.

In sum, we have no difficulty concluding that Roush's conduct violated rule 32:8.4(b).

### IV. Consideration of Sanction.

We next consider the appropriate sanction for Roush's violation of our rules of professional conduct. "We craft appropriate sanctions based upon each case's unique circumstances, although prior cases are instructive." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 239 (Iowa 2012).

> We have repeatedly held that the goal of our ethical rules is to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering. Important considerations include the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and our duty to uphold the integrity of the profession in the eyes of the public. In fashioning the appropriate sanction, we look to prior similar cases while remaining cognizant of their limited usefulness due to the variations in their facts. Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations, including uncooperativeness in the disciplinary investigation. Aggravating and mitigating circumstances are also important.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 666 (Iowa 2012) (citations and internal quotation marks omitted).

"A felony conviction is grounds for revocation or suspension of an attorney's license to practice law." *See Weaver*, 812 N.W.2d at 13 (citing Iowa Code § 602.10122(1)). "The record of conviction is conclusive evidence." Iowa Code § 602.10122(1) (2011). Here it is not disputed that Roush's 2011 second possession offense, while a felony under federal law, would only have been an aggravated misdemeanor under Iowa law. For present purposes the status of the offense as a felony or a misdemeanor does not affect the analysis. We would impose the same sanction either way.

This case involves both aggravating and mitigating factors. Roush previously received a private admonition for his marijuana possession conviction. *Cannon,* 821 N.W.2d at 882 (indicating that a private admonishment is an aggravating factor); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cohrt,* 784 N.W.2d 777, 783 (Iowa 2010) ("A prior admonition is properly considered in determining discipline, especially when it involves the same type of conduct as the conduct subject to discipline.").

On the other hand, Roush has cooperated with the Board, accepted responsibility, and demonstrated remorse. *Cannon*, 821 N.W.2d at 882. (listing these as mitigating factors). Also, Roush has taken steps to remedy his substance abuse issues. *Id*. at 881–82 (characterizing this as an additional mitigating factor). Additionally, Roush's general reputation of being a competent, solid advocate is a mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart,* ____ N.W.2d ____, ___ (Iowa 2013); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel,* 809 N.W.2d 96, 110 (Iowa 2012).

In some cases, we have considered alcoholism and depression to be mitigating factors. *Weaver*, 812 N.W.2d at 13. However, when the

underlying violation is a criminal conviction that *involves* substance abuse, it may be appropriate to give less weight to substance abuse as a mitigating factor. The reason is that we have already taken into account Roush's substance abuse in assessing the violation itself. In addition, we are not inclined to treat Roush's general and conclusory statements regarding undiagnosed and untreated depression as a mitigating factor. *See Van Ginkel*, 809 N.W.2d at 110 (declining to consider personal stress a mitigating factor when there was no evidence the attorney suffered from clinical depression); *see also Cannon*, 821 N.W.2d at 878 (noting that "Cannon presented no medical evidence as to how his depression affected his mind and decision making"). As Roush told the commission, "I don't believe it was ever a diagnosable condition."[2]

While every case presents unique facts, several of our prior disciplinary opinions provide guidance for the appropriate sanction in this case. Both the Board and Roush cite to our recent decision in *Cannon*. There, we suspended an attorney for thirty days after he was convicted of first offense OWI, possession of cocaine, and operating a boat while intoxicated. *Cannon*, 821 N.W.2d at 876–77. Although Cannon's and Roush's convictions are not identical, the underlying conduct and patterns of behavior are somewhat similar. Both individuals had ongoing substance abuse problems, resulting in criminal convictions. *Id.* at 878. Both attempted to avoid or downplay their own personal responsibility when initially apprehended, but later sought and complied with treatment. *Id.* at 878–79, 881. Both had prior

---

[2]By the same token, we are not inclined to penalize Roush for failing to deal with his mental health issues. The commission's findings fault Roush in this area. However, in the absence of an actual diagnosis, we are not persuaded by the required level of proof that Roush's offhand and perhaps ill-timed answers to a few questions at the hearing show that he "continues to grapple with significant mental health challenges."

disciplinary records, although Cannon's was more extensive. *Id.* at 882. Although *Cannon* is a reasonably close parallel to this case, we find the conduct here somewhat more deserving of opprobrium because Roush's law practice involved the defense of individuals charged with drug offenses. In fact, Roush's criminal law practice led to the detection of his illicit drug use by authorities.

In *Sloan,* we considered the proper sanction for an attorney convicted of possession of illegal drug paraphernalia and crack cocaine. 692 N.W.2d at 832. In that case, as here, the attorney represented criminal defendants. *Id.* We suspended the attorney's license for a period of not less than three months. *Id.* at 833. Like Roush, the attorney there sought treatment for his drug issues. *Id.* at 832. But *Sloan* involved additional circumstances favoring more severe sanctions that are not present here. The attorney represented a client whose drug-trafficking activities he had witnessed and with whom he had used illegal drugs. *Id.* One time he placed twenty-six calls to that client trying to obtain drugs. *Id.* The conflict led the district court to remove Sloan from the client's case based on a conflict of interest. *Id.*

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Stefani*, 616 N.W.2d 550 (Iowa 2000), we suspended for six months an attorney who pled guilty to possession of cocaine. *Stefani*, 616 N.W.2d at 552. Stefani's misconduct, however, was more pronounced. Following his initial conviction, he repeatedly violated the terms of his probation and release by continuing to use cocaine. *Id.* After the court ordered Stefani to enter treatment, he failed to do so by the specified date. *Id.* He eventually did seek treatment, but failed to report for probation supervision as he was required to do. *Id.* A warrant was issued for his arrest and "he absconded because he feared for his and his family's

safety. Nevertheless, he failed to notify the court, his probation officer, and the grievance commission of his whereabouts, his reason for leaving, or his expected time of return." *Id.* Ultimately, Stefani was convicted of a second cocaine possession offense. *Id.*

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Marcucci*, 543 N.W.2d 879 (Iowa 1996), we imposed a six-month suspension on an attorney who was convicted of OWI third, a felony under Iowa law. *Marcucci*, 543 N.W.2d at 883. However, that case was decided under the Iowa Code of Professional Responsibility for Lawyers and based on an approach that treated any conviction of OWI, third offense, as the equivalent of a per se ethical violation. *See Weaver*, 812 N.W.2d at 10; *Templeton*, 784 N.W.2d at 768; *Marcucci*, 543 N.W.2d at 882. We also imposed a three-month suspension on an attorney who received a second offense OWI when he tested more than twice the legal limit, repeatedly denied to the arresting officer that he had been drinking, tried to wheedle his way out of an arrest, and made false statements about a judge. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 79–80, 90–92 (Iowa 2008); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard*, 653 N.W.2d 373, 374–75, 376 (Iowa 2002) (imposing a one-year suspension on an attorney who was convicted of two counts of possession of methamphetamine, neglected client matters, and made a false response to the Board).

After weighing the commission's recommendation, the seriousness of Roush's violation, the aggravating factors, the mitigating factors, and our precedents, we conclude the appropriate discipline is a sixty-day suspension of Roush's license to practice law. We also condition Roush's reinstatement—per the commission's recommendation—on his seeking, and complying with, mental health and substance abuse evaluations.

*See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 553 (Iowa 2012) (requiring an attorney to "provide an evaluation from a licensed health care professional verifying his fitness to practice law"); *Axt*, 791 N.W.2d at 103 (conditioning reinstatement on treatment for depression and chemical dependency).

We decline, however, to condition Roush's reinstatement on his disengaging from representing his long-time client and AA sponsor, as the commission recommended. The commission did not make a finding that this representation would amount to a conflict of interest. *See* Iowa Ct. R. 32:1.7. Roush objects to the limitation, and the client wants to continue to have Roush as his attorney. We do not have sufficient information before us to make a determination that there would be a conflict of interest.

**V. Disposition.**

For the reasons stated, we suspend Roush's license to practice law in this state for sixty days. This suspension applies to all facets of the practice of law. *See id.* r. 35.13(3). Roush must comply with Iowa Court Rule 35.23 dealing with the notification of clients and counsel.

In addition, within forty-five days of the suspension, Roush must provide the court with (1) a mental health evaluation by a physician who has signed an affidavit of dissociation from him, indicating that he is fit to resume practice and has complied with any mental health treatment the physician suggests; and (2) a substance abuse evaluation indicating his fitness to practice law. Subject to these conditions, and absent an objection by the Board, we shall reinstate Roush's license on the day after the sixty-day suspension period expires. *See id.* r. 35.13(2). The costs of this action are taxed to Roush pursuant to Iowa Court Rule 35.27.

**LICENSE SUSPENDED.**