# IN THE SUPREME COURT OF IOWA

No. 13–0283

Filed September 27, 2013

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**TAREK A. KHOWASSAH,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends suspension of attorney's law license for ethical violations. **LICENSE SUSPENDED.**

Charles L. Harrington and Nicholas Trè Critelli III, Des Moines, for complainant.

Tarek A. Khowassah, Iowa City, pro se.

**ZAGER, Justice**.

This matter comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Iowa Supreme Court Attorney Disciplinary Board (Board) alleged the respondent, Tarek A. Khowassah, violated our ethical rules by operating a motor vehicle while intoxicated and misappropriating funds. The grievance commission found Khowassah's actions violated the Iowa Rules of Professional Conduct and recommended Khowassah's license to practice law be suspended for either three months or six months. Based on our de novo review of the findings of fact, conclusions of law, and recommendation of the commission, we conclude the Board established by a convincing preponderance of the evidence that Khowassah committed violations of our ethical rules. As a result, we suspend Khowassah's license to practice law indefinitely with no possibility of reinstatement for three months.

## I. Background Facts and Proceedings.

Khowassah was admitted to the Iowa bar in 2005. He was in the private practice of law from September 2005 until October 2010. In April 2011, Khowassah was hired by the Waterloo office of the state public defender.

On April 9, 2011, Khowassah was arrested for operating while intoxicated (OWI), first offense, and was subsequently convicted of the charge. Khowassah self-reported this conviction to the Board, which found that he violated Iowa Rule of Professional Conduct 32:8.4(b) by "commit[ting] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." For this violation, the Board privately admonished Khowassah on December 29, 2011.

Khowassah was a member of the U.S. Army Reserves. On March 24, 2012, Khowassah began a leave of absence from his employment with the state public defender pursuant to military orders requiring he report to active duty at Fort Huachuca, Arizona, for a period of 120 days. Prior to commencing his leave of absence, and consistent with his employer's policy on military leave, Khowassah completed and submitted time sheets that would entitle him to thirty days of paid military leave.

On March 25, 2012, shortly before leaving Iowa to begin his military service, Khowassah was arrested for OWI, second offense. He immediately called his commanding officer and reported the arrest. As a result of the arrest, his active duty orders were rescinded on March 28, 2012. Khowassah never advised his supervisor with the state public defender of his arrest or that his military orders had been rescinded. Khowassah did not thereafter report to work, but began receiving military leave pay from his employer. Khowassah did nothing to prevent the direct deposit of $5678.40 in military leave pay.

Khowassah contends that he did not inform his employer of his rescinded orders because he anticipated he would be able to quickly resolve the outstanding charge and his military orders would be reissued, thus entitling him to the military leave pay he had received. On May 7, 2012, Khowassah sent an email to his employer, inquiring as to a possible overpayment of his military leave pay, but failing to mention the rescission of his military orders. Khowassah did nothing to correct the previously submitted time sheets claiming military leave pay.

In June 2012, the state public defender began an investigation into the above-described events. At a meeting with the state public defender and his immediate supervisor on June 26, 2012, Khowassah acknowledged that his orders had been rescinded and that he had not

informed his employer of this fact. He further acknowledged he had retained the military leave pay, despite knowing he was not entitled to the money. On that same day, Khowassah wrote a check for $5678.40, reimbursing his employer for the entire amount of military leave pay he had improperly retained. On October 23, 2012, Khowassah was convicted of the lesser included offense of OWI, first offense.

## II. Standard and Scope of Review.

We have consistently articulated our standard of review in attorney disciplinary cases in the following manner:

> Attorney disciplinary proceedings are reviewed de novo. The Board bears the burden of proving misconduct by a convincing preponderance of the evidence, which is a lesser burden than proof beyond a reasonable doubt but a greater burden than is imposed in the usual civil case. If we determine the Board has met its burden and proven misconduct, we may impose a greater or lesser sanction than the sanction recommended by the commission.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 9 (Iowa 2012) (citations omitted).

The Board and Khowassah entered a joint stipulation of facts and conclusions of law. We note that stipulations of facts are binding on each of the parties. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 601 (Iowa 2012). "However, a stipulation is not binding as to a violation or a sanction. We will determine whether a violation occurred and the appropriate sanction based upon the facts we find from the stipulation and our review of the record." *Id.* (citations omitted).

## III. Ethical Violations.

The Board charged Khowassah with two violations of rule 32:8.4(b) and one violation of rule 32:8.4(c) of the Iowa Rules of Professional Conduct. The commission concluded the Board proved these charges by a convincing preponderance of the evidence. We review these attorney

disciplinary proceedings de novo. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 830 N.W.2d 355, 357 (Iowa 2013). Though we are not bound by the commission's findings and recommendations, we do give respectful consideration to them. *Id.* at 358.

**A. Committing a Criminal Act.** Iowa Rule of Professional Conduct 32:8.4(b) states, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). The Board alleges Khowassah committed two criminal acts that reflect adversely on his honesty, trustworthiness, or fitness as a lawyer: operating while intoxicated and theft for the misappropriation of funds. We acknowledge Khowassah was not acting as an attorney when he committed the acts the Board classified as criminal acts. Nevertheless, we have consistently held this fact is irrelevant when determining whether attorneys violate rule 32:8.4(b). *Weaver*, 812 N.W.2d at 12–13. We will address both the OWI charge and the theft charge in turn.

Initially, we note that "not all criminal acts reflect on an attorney's fitness to practice law. Rather, we focus on the link between the conduct and the actor's ability to function as a lawyer." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 877 (Iowa 2012) (citations and internal quotation marks omitted). We have observed:

> "Illegal conduct *can* reflect adversely on fitness to practice law. A pattern of repeated offenses, even ones of minor significance when considered separately, *can* indicate indifference to legal obligation. The mere commission of a criminal act does not necessarily reflect adversely on the fitness of an attorney to practice law. The nature and circumstances of the act are relevant to determine if the commission of the criminal act reflects adversely on the attorney's fitness to practice law."

*Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 767 (Iowa 2010)).

We consider specific factors in determining whether a sufficient nexus exists to support the conclusion that a criminal act reflects adversely on the attorney's fitness to practice law.

> "There must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law. Pertinent considerations include the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct."

*Id.* at 877–78 (quoting *Templeton*, 784 N.W.2d at 767).

1. *OWI Conviction.* Khowassah has stipulated to his OWI conviction. We have consistently noted that "we find stipulations of facts by the parties to be binding on them." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 528 (Iowa 2011). Thus, we conclude the Board has proven Khowassah was convicted of the offense of operating while intoxicated, first offense, by a convincing preponderance of the evidence.

We initially note "[a]n act that signals the characteristic of intemperance is considered to be an act that reflects adversely on a lawyer's fitness to practice law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 41 (Iowa 2011). We now apply the *Templeton* factors to determine if this criminal act reflects adversely on Khowassah's fitness to practice law. *See Cannon*, 821 N.W.2d at 877–78.

We begin by examining Khowassah's mental state. *See id.* at 878. Khowassah acknowledges he struggles with alcohol problems and depression. He contends marital and child custody issues contributed to his depression and alcohol abuse. We have repeatedly said that

" 'depression and alcoholism do not excuse' " attorneys from violating our ethical rules. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Roush*, 827 N.W.2d 711, 717 (Iowa 2013) (quoting *Cannon*, 821 N.W.2d at 878).

We also consider whether Khowassah's conduct shows disrespect for the law and law enforcement. *See Cannon*, 821 N.W.2d at 877. We previously held an attorney who prevented his wife from calling 911 to report his violent behavior towards her showed disrespect for law enforcement. *Schmidt*, 796 N.W.2d at 41. In that case, we also found the attorney's actions in breaking through a steel cage in a police car demonstrated disrespect for the law and law enforcement. *Id.* In contrast, the record does not indicate Khowassah was anything but cooperative with law enforcement during the stop or the subsequent criminal proceedings. The record also does not indicate he attempted to use his position as an attorney to unfairly influence the proceedings. His conduct in driving while intoxicated seems more reflective of his compromised mental state than a reflection of disrespect for the law.

We also note that no one was actually victimized by Khowassah's crime, a factor weighing against a finding that he violated rule 32:8.4(b). However, though no one was injured as a result of Khowassah's compromised driving, we have repeatedly noted that "operating a motor vehicle while intoxicated 'create[s] . . . grave risk of potential injury' to others." *Cannon*, 821 N.W.2d at 878 (quoting *Weaver*, 812 N.W.2d at 11). Thus, this factor weighs heavily in favor of finding a violation occurred.

Finally, we consider whether Khowassah engaged in a pattern of criminal conduct. *Id.* In *Roush*, we identified several cases in which we found the Board established that an attorney engaged in a pattern of criminal conduct. 827 N.W.2d at 717. These cases included an attorney

who was convicted for illegal drug possession, but continued to use drugs and escalated his drug use; an attorney who was convicted of OWI on three occasions; an attorney who was convicted twice for domestic abuse and who violated multiple court orders; an attorney who repeatedly peeped into a home, constituting six counts of invasion of privacy; and an attorney who had four substance abuse-related convictions. *Id.* (citations omitted). This is a closer case than the cases cited by *Roush*, as it involved only two incidents. In addition to his 2012 OWI, Khowassah had one prior OWI. Nevertheless, these incidents were within one year of each other. We find this factor weighs in favor of finding a violation of rule 32:8.4(b).

Based on our evaluation of the *Templeton* factors, we find Khowassah committed a violation of rule 32:8.4(b) because his criminal conduct in operating a motor vehicle while intoxicated reflects adversely on his fitness to practice law.

2. *Theft.* The Board alleges Khowassah's failure to return money he knew he had not earned constituted theft. Khowassah concedes he retained money that was not his. Further, he acknowledges if he had promptly made his employer aware of the change in his military orders, the money would never have been deposited. With no dispute as to the facts, we must analyze whether Khowassah committed the crime of theft.

We first note that while Khowassah was not criminally charged with theft, that fact does not color our analysis. *Comm. on Prof'l Ethics & Conduct v. Hall,* 463 N.W.2d 30, 35 (Iowa 1990) ("It is . . . immaterial that respondent was not charged or convicted of a crime. A criminal conviction is not a condition precedent to a discipline proceeding when the facts themselves warrant discipline."). Rather, in attorney disciplinary cases involving allegations of crime, "[t]he charges against

[the attorney] must be proved by a convincing preponderance of the evidence." *Comm. on Prof'l Ethics & Conduct v. Pappas*, 313 N.W.2d 532, 534 (Iowa 1981). We also note that "a criminal law defense is not a defense in a disciplinary proceeding since the purpose of a disciplinary hearing is not primarily intended to punish the lawyer but rather to protect the public." *Comm. on Prof'l Ethics & Conduct v. Williams*, 473 N.W.2d 203, 206–07 (Iowa 1991) (finding an entrapment defense did not protect an attorney from disciplinary charges based on his criminal conduct).

The Board alleges Khowassah's failure to alert his employer as to the change in his eligibility to receive military leave pay and subsequent delay in returning the incorrectly received military leave pay constitutes theft. Khowassah acknowledges the error in allowing the funds to be deposited and then failing to promptly return them but denies these actions meet Iowa's statutory definition of theft.

Our legislature has decreed:

> A person commits theft when the person does any of the following:
>
> 1. Takes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof.
>
> 2. Misappropriates property which the person has in trust, or property of another which the person has in the person's possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property, or conceals found property, or appropriates such property to the person's own use, when the owner of such property is known to the person.

Iowa Code § 714.1(1)–(2) (2011).

The Board cites *State v. Bugely*, 408 N.W.2d 394 (Iowa Ct. App. 1987), a case involving the failure of a defendant to return a rental car,

as support for its contention that Khowassah committed theft in the second degree. We disagree, finding that case to be distinguishable.

In *Bugely*, the court of appeals emphasized that "[t]he fact finder may *infer* misappropriation from failure to return . . . property within 72 hours of [a] rental agreement deadline." 408 N.W.2d at 396. The court also noted that "there must be sufficient evidence of a specified deadline for return to support conviction of theft by a bailee of a rental car." *Id.* Further, in *Bugely*, the rental car agency attempted to regain possession of the car by calling the defendant's mother—the number the defendant had given it when the defendant rented the car. *Id.* at 395. The defendant's mother told the rental car agency the defendant was not there and she did not know when he would return. *Id.* The defendant did not return the rental car agency's call. *Id.* Only after the defendant was apprehended by police was the agency able to regain control of its property. *Id.*

The facts in this case are clearly distinguishable. Here, Khowassah believed he could quickly resolve the criminal charge and have his military orders reissued. He would then be entitled to the state military leave pay, only on a delayed basis. After being confronted by his employer, Khowassah immediately acknowledged that this was a mistake and returned the money on the same day. Based on this record, we do not find Khowassah had the requisite intent to commit the criminal act of theft, even under the lesser standard of a convincing preponderance of the evidence. Because we do not conclude that Khowassah committed theft, we correspondingly cannot conclude that he committed a second violation of rule 32:8.4(b).

**B. Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation.** Iowa Rule of Professional Conduct 32:8.4(c) states,

"It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." The Board alleges that Khowassah's conduct in receiving and neglecting to return funds to which he had no claim constituted conduct involving dishonesty, fraud, deceit, or misrepresentation.

We begin by noting that mere negligence is not sufficient to constitute a violation of rule 32:8.4(c) prohibiting misrepresentation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011). We found no violation of rule 32:8.4(c) when two attorneys, working together, failed to provide information which their client requested, including billing records and an accounting for funds. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Qualley*, 828 N.W.2d 282, 292–93 (Iowa 2013) (concluding two attorneys did not violate rule 32:8.4(c) when they were merely "incompetent" and did not intentionally make false statements to their client). We did find a violation of this rule when an attorney failed to provide relevant discovery information in a case in which he was a party. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 180 (Iowa 2013). Additionally, we have found violations of rule 32:8.4(c) in situations in which attorneys have made false statements to the security commission, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 421 (Iowa 2012), forged a document, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Newman*, 748 N.W.2d 786, 787–88 (Iowa 2008), knowingly filed a forged document with the court, *McCarthy*, 814 N.W.2d at 609, and altered a document, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schall*, 814 N.W.2d 210, 213–14 (Iowa 2012).

In this case, Khowassah knew he was only entitled to receive military leave pay if he was on active duty military leave. He knew the

military leave pay had been deposited into his account even though he was no longer entitled to receive it. Although he arguably believed he could get the criminal charges promptly resolved, get his orders reinstated, and again be entitled to the military leave pay, he kept the money well beyond the time any of this was possible. We conclude Khowassah engaged in conduct involving dishonesty, deceit, and misrepresentation in violation of Iowa Rule of Professional Conduct 32:8.4(c).

### IV. Sanction.

Under our court rules, we have the authority to discipline an attorney in multiple ways, including the "suspension or revocation of the attorney's license, as well as additional or alternative sanctions such as reprimands, restitution, payment of costs, practice limitations, appointment of a trustee or receiver 'and other measures consistent with the purposes of attorney discipline.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 269 (Iowa 2010) (quoting Iowa Ct. R. 35.9, now Iowa Ct. R. 35.10).

We determine sanctions based on individual circumstances, taking into account multiple factors. *Qualley*, 828 N.W.2d at 293.

> In determining the appropriate discipline, we consider the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the respondent's fitness to continue in the practice of law, as well as any aggravating and mitigating circumstances. The form and extent of the sanctions must be tailored to the specific facts and circumstances of each individual case. Significant distinguishing factors in the imposition of punishment center on the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.

*Id.* (citation and internal quotation marks omitted).

Khowassah committed two violations of our rules of professional conduct. In sanctioning attorneys who have violated rule 32:8.4(b), we have previously imposed sanctions ranging from a public reprimand to revocation. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 741–42 (Iowa 2013) (revoking an attorney's license after he was convicted on two counts of felony forgery for misappropriating client funds); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wheeler*, 824 N.W.2d 505, 513 (Iowa 2012) (suspending an attorney's license for six months for knowingly making a false statement to a financial institution); *Cannon*, 821 N.W.2d at 882–83 (suspending an attorney's license for thirty days for three substance abuse-related convictions that adversely reflected on his fitness to practice law);*Weaver*, 812 N.W.2d at 16 (suspending for two years the license of an attorney convicted of operating while intoxicated, third offense, and harassment and who also had multiple previous disciplinary and legal problems); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf*, 792 N.W.2d 295, 299, 301–02 (Iowa 2010) (imposing a public reprimand for an attorney who failed to file required tax returns, but noting that the attorney did not realize that he needed to file the returns); *Templeton*, 784 N.W.2d at 770–71 (suspending an attorney's license for three months for multiple instances of crimes involving peeping into windows).

For attorneys who have violated rule 32:8.4(c), we have imposed sanctions ranging from a public reprimand to a two-year suspension. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Liles*, 808 N.W.2d 203, 206–07 (Iowa 2012) (suspending an attorney's license for sixty days for forging the signature of a witness to a will); *Newman*, 748 N.W.2d at 789 (imposing a public reprimand on an attorney who forged a judge's signature on an "approved-but-unsigned order"); *Iowa Supreme Ct. Att'y*

*Disciplinary Bd. v. Thompson*, 732 N.W.2d 865, 868–69 (Iowa 2007) (suspending an attorney's license for nine months for forging the signature of a judge on a court order); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 603 N.W.2d 574, 575–76 (Iowa 1999) (suspending an attorney's license for two years for numerous false statements to conceal his neglect of a real estate transaction).

A number of factors weigh in favor of mitigation. "We consider cooperation with the Board's investigation to be a mitigating factor." *Qualley*, 828 N.W.2d at 294. Khowassah fully cooperated with the Board. Mental and physical conditions, including alcoholism and depression, may also be mitigating factors, though they do not constitute legal justifications or excuses for violations of ethics rules. *Cannon*, 821 N.W.2d at 881. Due to the isolated nature of this incident, we accept Khowassah's explanation that the separation from his wife and inability to see his children for an extended period of time caused him to act in ways that were not consistent with his character and contributed to his depression and alcohol abuse.

Khowassah has sought and complied with substance abuse and mental health treatment. Khowassah served five days in the Johnson County jail and attended the forty-eight-hour Kirkwood College OWI class. In November 2012, he successfully completed intensive outpatient treatment at MECCA in Iowa City, Iowa. He has also been receiving counseling and has been prescribed several antidepressant medications. We conclude Khowassah's actions in addressing his alcohol abuse and depression are mitigating factors. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009).

Khowassah has also demonstrated remorse and taken responsibility for his behavior. He has acknowledged his mistakes and

expended effort in receiving treatment for the underlying causes of his actions. Further, to avoid complications in the likely event of a revocation or suspension, he chose to suspend his practice of law until the issue could be fully resolved. "We consider accepting responsibility and demonstrating remorse to be mitigating factors." *Cannon*, 821 N.W.2d at 882.

There are aggravating circumstances also. Approximately fifteen months before the OWI arrest that triggered the rescission of his military orders, the Board issued Khowassah a private admonition for a previous OWI. Though we "do not discipline an attorney twice for the same conduct, . . . we do consider previous disciplinary action as an aggravating factor in determining sanctions." *Id.* (citation omitted). While we do not consider private admonishments to be discipline per se, we have held that they put attorneys on notice not to repeat the conduct. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 110 (Iowa 2012). Thus, Khowassah's previous admonition constitutes an aggravating factor.

While we acknowledge that when he was confronted, Khowassah made prompt repayment of the funds he inappropriately retained, he did not attempt repayment until the confrontation. When another attorney failed to repay unauthorized withdrawals from a nonprofit association's account until after he was caught, we found that if the attorney "had truly understood the gravity of his actions and had genuinely intended to replace the . . . funds, he would have done so long before the discovery of his confiscation." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 653 (Iowa 2002). As a result, we gave "no weight to [the attorney]'s belated assertion that he always intended to make repayment." *Id.* Based on the two violations of our ethical rules, and

considering all of the mitigating and aggravating factors, we conclude a short period of suspension is necessary.

### V. Disposition.

Upon our de novo review, and for the reasons set forth above, we suspend the license of Tarek A. Khowassah to practice law in this state for three months from the date of the filing of this opinion. The suspension applies to all facets of the practice of law, as provided in Iowa Court Rule 35.13(3), and requires notification to clients, as outlined in rule 35.23.

Upon application for reinstatement, Khowassah must demonstrate that he has not practiced law during the period of his suspension and that he has complied with all of the requirements for reinstatement provided in rule 35.14. Prior to any reinstatement, Khowassah shall provide documentation from a licensed health care professional regarding the maintenance of his sobriety and his fitness to practice law. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 831 N.W.2d 194, 203 (Iowa 2013) (imposing a similar requirement). The costs of this proceeding are assessed against Khowassah pursuant to rule 35.27(1). Reinstatement shall not be ordered until all costs are paid. Iowa Ct. R. 35.27(3).

### LICENSE SUSPENDED.