WIGGINS, Justice (concurring in part and dissenting in part).
*177 I respectfully dissent. I agree with the majority that Bauermeister's conduct violated Iowa Rule of Professional Conduct 32:8.4(b). However, I disagree on the appropriate sanction.
In determining the proper sanction, "we consider 'the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public.' " Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell , 726 N.W.2d 397, 408 (Iowa 2007) (alteration in original) (quoting Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen , 723 N.W.2d 806, 810 (Iowa 2006) ). We also consider any aggravating or mitigating circumstances. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton , 784 N.W.2d 761, 769-70 (Iowa 2010). Most importantly, we try to achieve consistency with prior cases involving similar misconduct. Id. at 769.
A conviction of a felony may be grounds for revocation or suspension of an attorney's license to practice law. Iowa Code § 602.10122(1) (2019). Prior to 1990, we revoked attorneys' licenses for illegal drug trafficking. Comm. on Prof'l Ethics & Conduct v. Owens , 427 N.W.2d 463, 465 (Iowa 1988) ("We do not think a lawyer who had a part in a conspiracy concerning illegal drug traffic possesses the qualities of good character essential in a member of the Iowa bar."); Comm. on Prof'l Ethics & Conduct v. Green , 285 N.W.2d 17, 18 (Iowa 1979) (en banc) (revoking license of attorney who took part in delivery of drugs even though he "characterized himself as a 'dupe' in the transaction"); Comm. on Prof'l Ethics & Conduct v. Hanson , 244 N.W.2d 822, 824 (Iowa 1976) (en banc) (revoking license of attorney "who attempted to engage in illegal drug traffic and who converted partnership funds"). In recent years, we have taken a different approach to attorneys who commit felonies.
In Iowa Supreme Court Board of Professional Ethics & Conduct v. Marcucci , the attorney pled guilty to operating while intoxicated (OWI), third offense, a class "D" felony. 543 N.W.2d 879, 880 (Iowa 1996) (en banc). We suspended the attorney's license for six months. Id. at 883.
In Iowa Supreme Court Board of Professional Ethics & Conduct v. Palmer , the attorney pled guilty to "fraudulent use of an unauthorized access device to obtain monies from a federally insured bank," a felony under federal law. 563 N.W.2d 634, 634-35 (Iowa 1997) (per curiam). This crime involves dishonesty. Id. at 635. The attorney was not imprisoned for his crime, but he failed to answer the disciplinary complaint, respond to the disciplinary board's requests for admissions, and appear for his disciplinary hearing. Id. We revoked the attorney's license. Id.
In Iowa Supreme Court Board of Professional Ethics & Conduct v. Vinyard , a federal jury found the attorney guilty of twelve counts of money laundering and fourteen counts of mail fraud. 656 N.W.2d 127, 128 (Iowa 2003). These crimes involve dishonesty. Id. at 130, 131-32. The court sentenced him to "imprisonment of seventy months and ordered [him] to pay a special assessment of $2600 plus restitution of over $1,418,000." Id. at 129. We revoked the attorney's license. Id. at 132.
In Iowa Supreme Court Attorney Disciplinary Board v. Dull , the attorney was convicted of OWI, third offense, a class "D" felony. 713 N.W.2d 199, 202 (Iowa 2006), overruled in part on other grounds *178 by Templeton , 784 N.W.2d at 768-69. The attorney had other rule violations in addition to the rule violations arising from the felony conviction. Id. at 203-05. We suspended the attorney's license for two years. Id. at 207.
In Iowa Supreme Court Attorney Disciplinary Board v. Carroll , the attorney pled guilty to second-degree theft, a class "D" felony under Iowa law. 721 N.W.2d 788, 790 (Iowa 2006). This crime involves dishonesty. See id. at 791. The court "placed [the attorney] on probation for twenty-four months and ordered [him] to complete 100 hours of approved community service." Id. at 790. We revoked the attorney's license. Id. at 792.
In Iowa Supreme Court Attorney Disciplinary Board v. Weaver , the attorney pled guilty to OWI, third offense, a class "D" felony. 812 N.W.2d 4, 7 (Iowa 2012). The court sentenced the attorney to five years in prison and a fine of $ 3125. Id. at 7-8. We suspended the attorney's license for two years. Id. at 15.
In Iowa Supreme Court Attorney Disciplinary Board v. Wheeler , the attorney pled guilty to the felony of knowingly making a false statement to a financial institution. 824 N.W.2d 505, 509 (Iowa 2012). There, the attorney had executed mortgage application documents that were prepared by a client and contained misstatements. Id. at 508-09. The federal court "sentenced [him] to time served, placed him on supervised release for five years, ordered him to perform 200 hours of community service, and required him to pay $821,134 in restitution." Id. at 509. We suspended the attorney's license for six months. Id. at 513.
In Iowa Supreme Court Attorney Disciplinary Board v. Bieber , the attorney pled guilty to misprision of a felony, a felony under federal law. 824 N.W.2d 514, 516 (Iowa 2012). The attorney provided information in a real estate closing process that falsely stated the inflated sale price was the agreed sale price and "failed to reveal the lower actual price and cash back payment." Id. at 517. The federal court sentenced the attorney to three years of probation and ordered him to pay $ 37,969.99 as restitution to the lender. Id. at 516. We suspended the attorney's license for six months. Id. at 528.
In Iowa Supreme Court Attorney Disciplinary Board v. Roush , the attorney pled guilty to possession of cocaine base, a felony under federal law. 827 N.W.2d 711, 714 (Iowa 2013). The attorney was sentenced to "a fifteen-day prison term and a $2500 fine." Id. We suspended the attorney's license for sixty days. Id. at 720.
In Iowa Supreme Court Attorney Disciplinary Board v. Stowe , the attorney was convicted of two counts of felony forgery in violation of Iowa Code section 715A.2. 830 N.W.2d 737, 741 (Iowa 2013). The convictions stemmed from the attorney forging a client's signature "on two checks [the attorney] had stolen and used to transfer funds into his personal bank account." Id. Forgery is a crime involving dishonesty. See id. at 741, 743. The attorney also had a nonfelony conviction for possession of methamphetamine. Id. at 741. We revoked the attorney's license because he converted funds to which he did not have a colorable future claim.[2] Id. at 742-43.
In Iowa Supreme Court Attorney Disciplinary Board v. Engelmann , a federal jury convicted the attorney of one count of conspiracy to commit bank fraud or wire *179 fraud, two counts of bank fraud, and six counts of wire fraud. 840 N.W.2d 156, 158-59 (Iowa 2013). These crimes deal with dishonesty. See id. at 159-60. The court sentenced the attorney to thirty-six months' imprisonment and ordered him to pay a total of $392,937.73 in restitution to the defrauded financial institutions. Id. at 164. We revoked the attorney's license. Id. at 167.
In examining these cases where felony convictions were the basis of discipline, a pattern arises. Where the felony involves dishonesty, we consider whether the dishonesty was intended to result in the misappropriation or conversion of funds. If it was so intended, as in Palmer , Vinyard , Carroll , Stowe , and Engelmann , we have not hesitated to revoke the attorney's license. See Engelmann , 840 N.W.2d at 167 ; Stowe , 830 N.W.2d at 742-43 ; Carroll , 721 N.W.2d at 792 ; Vinyard , 656 N.W.2d at 132 ; Palmer , 563 N.W.2d at 635. If the dishonesty was not so intended, as in Wheeler and Bieber , we have merely suspended the attorney's license. Bieber , 824 N.W.2d at 528 ; Wheeler , 824 N.W.2d at 513. And when the felony involves drugs or alcohol, as in Marcucci , Dull , Weaver , and Roush , we have not revoked the attorney's license. See Roush , 827 N.W.2d at 714, 720 ; Weaver , 812 N.W.2d at 7, 15 ; Dull , 713 N.W.2d at 202, 207 ; Marcucci , 543 N.W.2d at 880, 883.
Because Bauermeister's conduct does not involve dishonesty, his conviction for conspiracy to possess and distribute marijuana should not lead to the revocation of his license to practice law. Instead, we must look at the aggravating and mitigating factors to determine the proper discipline. This disposition is consistent with other jurisdictions. See, e.g. , Fink v. Ky. Bar Ass'n , 568 S.W.3d 354, 355, 356-57 (Ky. 2019) (after considering aggravating and mitigating factors, suspending Kentucky attorney's license for five years following Indiana conviction of felonious methamphetamine dealing); Notice of Suspension & Restitution with Conditions re Waters, Nos. 12-101-AI, 12-140-JC, 13-47-GA, at 1 (Mich. Att'y Discipline Bd. July 18, 2013), http://www.adbmich.org/coveo/notices/2013-07-18-12n-101a.pdf [https://perma.cc/4C23-M5RP] (suspending Michigan attorney's license for three years after conviction of two counts of felonious delivery of a controlled substance); In re Disciplinary Proceedings Against Waters , 367 Wis.2d 279, 876 N.W.2d 145, 146-47 (2016) (per curiam) (suspending, on reciprocal discipline, Michigan attorney's license to practice in Wisconsin for three years).
Bauermeister was a public official when he committed this act. This is an aggravating factor. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stansberry , 922 N.W.2d 591, 600 (Iowa 2019) (treating attorney's position as an assistant county attorney at the time of the criminal conduct as an aggravating factor).
On the other side of the scale, many mitigating factors are in Bauermeister's favor. First, he has no prior record of discipline. See Bieber , 824 N.W.2d at 527 ; Wheeler , 824 N.W.2d at 513 ; Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf , 792 N.W.2d 295, 301-02 (Iowa 2010) (considering prior ethical practices in fashioning sanction). Second, he self-reported his conduct. See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thompson , 732 N.W.2d 865, 868-69 (Iowa 2007) (noting an attorney's recognition of wrongdoing is a mitigating factor). However, the mitigating force of his self-reporting is lessened by the fact that it happened only after his coconspirator was caught in January 2017 and federal agents served Bauermeister with a search warrant for his phone in May 2017. See *180 Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson , 884 N.W.2d 772, 781 (Iowa 2016). Third, Bauermeister has taken responsibility for his actions and is remorseful. See Roush , 827 N.W.2d at 719 ; Bieber , 824 N.W.2d at 527 ; Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields , 790 N.W.2d 791, 799 (Iowa 2010). Fourth, his conduct did not affect his behavior toward his clients, fellow lawyers, or judges. Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Keele , 795 N.W.2d 507, 514 (Iowa 2011) (finding the board failed to demonstrate the attorney's felony conviction related to his fitness to practice law because, in part, the attorney's illegal conduct "ha[d] not affected the professional relationships he ha[d] with his clients, fellow lawyers, or judges"). Fifth, nothing in the record suggests the conduct at issue in this case harmed any of his clients. See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross , 861 N.W.2d 211, 230 (Iowa 2015) ; Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt , 791 N.W.2d 98, 103 (Iowa 2010) ; Marcucci , 543 N.W.2d at 881. Sixth, he was cooperative throughout the disciplinary process. See Roush , 827 N.W.2d at 719 ; Bieber , 824 N.W.2d at 528 ; Wheeler , 824 N.W.2d at 513 ; Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schall , 814 N.W.2d 210, 215 (Iowa 2012) ; cf. Palmer , 563 N.W.2d at 635 (explaining the attorney's failure to answer the disciplinary complaint, respond to requests for admissions, and appear at his disciplinary hearing overbore "[a]ny inclination on our part to temper the sanction imposed"). Seventh, he has provided numerous hours of community service in his capacity as a youth sports coach. See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness , 844 N.W.2d 456, 467 (Iowa 2014) (acknowledging history of community service is a mitigating factor); Wheeler , 824 N.W.2d at 513.
Lastly, the assistant United States attorney who prosecuted Bauermeister and the federal judge who sentenced him did make a determination: Bauermeister did not need to be imprisoned for rehabilitation, punishment, or public-protection reasons. See, e.g. , Powell , 726 N.W.2d at 408 (noting protection of the public is a factor in determining the appropriate sanction for attorney discipline). In the past, we have only suspended attorneys who committed felonies but received probation or a similar sentence in federal criminal proceedings. See Bieber , 824 N.W.2d at 516, 528 ; Wheeler , 824 N.W.2d at 509, 513 (acknowledging that the federal court found supervised release was appropriate because "there was no need to protect the public from further harm or increase the sentence to defer future conduct"). But see Palmer , 563 N.W.2d at 634-35 (revoking the attorney's license following his felony conviction because his fraudulent conduct was intended to result in conversion of funds and he completely failed to participate in or acknowledge the disciplinary process or proceedings).
Having considered all the factors mentioned above, I would conclude Bauermeister's conduct requires us to suspend his license to practice law indefinitely without possibility of reinstatement for three years rather than revoke his license.

We declined to address the ethics violations arising from the attorney's other misconduct, including the possession conviction, because we decided to revoke his license for the conversion-related misconduct. Stowe , 830 N.W.2d at 741.